[No. 8503-1-III. Division Three. March 29, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. SUZANNE WESTFALL VINYARD, *Appellant*.

*Douglas Haynes* and *Thorner, Kennedy & Gano,* for appellant (appointed counsel for appeal).

*Gerald Matosich, Prosecuting Attorney,* for respondent.

THOMPSON, J.—Suzanne Westfall Vinyard entered a plea of guilty to custodial interference in the second degree. Pursuant to RCW 9.94A.140(1) and RCW 9A.40.080, she was ordered to pay $76,021.98 restitution to her former husband for expenses he incurred in locating and returning the child wrongfully abducted. She appeals. We reverse and remand.

In August 1984, Mrs. Vinyard unlawfully took her youngest child, Stephen, from Mr. Vinyard's custody. She fled and hid the child for approximately 15 months until discovered in Kerrville, Texas. A warrant was issued for her arrest after the abduction.

During the 15 months, Mr. Vinyard employed investigators, had photos and posters printed, contacted numerous agencies specializing in locating missing and parentally abducted children, and personally traveled around the country in an effort to locate his child, and to publicize both his child's abduction and the problem of parental abduction in general. He was advised by a deputy prosecutor and his own attorney to keep track of his expenses so

that, when Stephen was located, a court could order Mrs. Vinyard to make restitution for his expenses.

Mrs. Vinyard and Stephen were located when the child's picture was recognized on a poster at a grocery store offering a $5,000 reward. Mr. Vinyard had paid $3,000 of the reward at the time of the restitution hearing.

After Stephen was returned, Mr. Vinyard began to compile documentation and a summary of his expenses. He asked the Davidson Agency, a nonprofit organization specializing in locating missing children, which had aided him in his search for the child, to send him a bill outlining its expenses. The bill totaled $41,500. Mr. Vinyard paid $5,000 of that amount.

After Stephen's return, Mr. Vinyard took him to a psychologist for therapy, and to a medical doctor for treatment of ear problems. Mr. Vinyard employed an attorney throughout this period. Hearings were held to limit Mrs. Vinyard's visitation. The psychologist was used in part to support Mr. Vinyard's efforts to limit visitation.

After Mrs. Vinyard pleaded guilty to custodial interference in the second degree, a restitution hearing was held. Only Mr. Vinyard testified. The State submitted one exhibit, a summary documentation of expenses prepared by Mr. Vinyard containing receipts and estimates. The trial court ruled the entire amount claimed, $76,021.98, was reasonable, and ordered Mrs. Vinyard to pay that amount. Included was:

$4,700.00 estimated future expenses
5,000.00 reward
9,433.35 private investigators
4,540.00 attorney fees
4,931.55 phone bills
3,281.94 travel out–of–state to find
 and return Stephen
2,866.60 local travel
2,030.51 for the child's psychological therapy
 198.72 for medical treatment of Stephen
 590.04 photos and posters
1,426.17 miscellaneous and travel expense

277.00 documents
117.69 copies of documents and reports
128.44 postage
41,500.00 billed to Mr. Vinyard by the
Davidson Agency

There is no dispute the court had authority to order restitution. The issue is whether the trial court erred in ordering restitution of $76,021.98.

The appellate court may reverse an order of restitution only if the trial court abused its discretion, *State v. Mark*, 36 Wn. App. 428, 433, 675 P.2d 1250 (1984). In addition, restitution is authorized only by statute, and a trial court exceeds its statutory authority in ordering restitution where the loss suffered is not causally related to the offense committed by the defendant, or where the statutory provisions are not followed. *Mark*, at 436; *State v. Hartwell*, 38 Wn. App. 135, 141, 684 P.2d 778 (1984).

Suzanne Vinyard was convicted under RCW 9A.40.070 of custodial interference in the second degree, making the provisions of RCW 9A.40.080(1) applicable:

> Any reasonable expenses incurred in locating or returning a child or incompetent person shall be assessed against a defendant convicted under RCW 9A.40.060 or 9A.40.070.

In ordering restitution, the court also relied on the general restitution statute, RCW 9.94A.140. It provides in relevant part:

> (1) . . . Restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses . . .
>
> (2) Restitution may be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property. . . .
>
> . . .
>
> (4) This section does not limit civil remedies or defenses available to the victim or defendant.

Thus, the court actually ordered restitution in two separate areas: (1) reasonable expenses incurred in locating or returning the child, and (2) easily ascertainable damages for injury, including the "actual expenses incurred for treatment . . .".

Under RCW 9A.40.080 two requirements must be satisfied before a court may order a defendant convicted of custodial interference to reimburse the victim for certain expenses: (1) those expenses must be "reasonable"; and (2) they must be "incurred". RCW 9.94A.140 is broader and allows restitution to any person who sustains physical or financial injury to person or property as a result of the crime charged as long as the expense is "actually incurred". *See* RCW 9.94A.030(25); *State v. Goodrich*, 47 Wn. App. 114, 733 P.2d 1000 (1987); *State v. Halsen*, 50 Wn. App. 30, 746 P.2d 1235 (1987); *State v. Forbes*, 43 Wn. App. 793, 719 P.2d 941 (1986). In interpreting these statutes, we must attempt to ascertain and give effect to the intent and purpose of the Legislature, as expressed in the act. *State v. Eilts*, 94 Wn.2d 489, 493, 617 P.2d 993 (1980).

■ First, as to the $4,700 allowed for future estimated expenses, *State v. Goodrich, supra,* is dispositive. The court there held it was error for the trial court to award restitution for future medical expenses not yet incurred by the victim. To be "incurred", the victim must be obligated to pay the expense, *i.e.,* become liable or subject to. *Goodrich,* at 117. There must be adequate proof that the victim is obligated to pay for medical services to be performed, and adequate proof of the amount of that obligation, before an award of restitution for future medical services is allowable. We are persuaded this reasoning should apply to other future expenses as well. Here, other than Mr. Vinyard's estimate of $2,000 for "continuing psychological therapy", $700 for "additional travel expenses", and $2,000 for "additional attorney expense", there was no proof of any obligation to pay future expenses. These expenses were not "incurred" at the time of the award and thus were not properly included in the order of restitution.

 As previously noted, all restitution awarded must be "causally connected" to the crime Mrs. Vinyard was convicted of. *State v. Hartwell, supra; State v. Bedker*, 35 Wn. App. 490, 667 P.2d 1113 (1983). We cannot perceive from the record any causal connection between future attorney fees awarded and the crime of custodial interference. Also, while travel expenses incurred before Stephen was returned are connected to Mr. Vinyard's search for the child, those after his return do not appear to be. There was no proof in the record, other than Mr. Vinyard's testimony, that the medical expenses included for psychological counseling, present or future, resulted from the crime committed by Mrs. Vinyard. Although it is reasonable to believe Stephen suffered psychologically from his involvement in this ordeal, still there must be some competent testimony showing a connection between the criminal acts and the need for treatment.

Likewise, the record does not support the award of $41,500 to the Davidson Agency as an expense incurred in trying to locate the child. Because Mr. Vinyard was not "liable or subject to" payment for the expenses, he did not "incur" the expense. His testimony with regard to the Davidson bill was as follows:

Q You have no legal obligation to pay that $41,500, do you?
A I have a moral obligation for all the other missing children.
Q I asked you, do you have a legal obligation to pay that $41,500?
A They're not going to take my home. I, I feel it's an obligation, but they are not going to come against me.
Q In fact, they would not have billed you if you had not called and requested it, would they?
A They were not going to bill me.

In addition, the Davidson Agency's bill is almost totally devoid of any documentation to substantiate the considerable sum requested. As such it does not meet the "reasonable" requirement of RCW 9A.40.080.

The restitution award also included $4,540 for past attorney fees incurred in addition to the $2,000 future attorney fees discussed above. Testimony indicated some of the fees were incurred incidental to various hearings after the child's return, unrelated to this action, regarding Mrs. Vinyard's visitation rights. Although Mrs. Vinyard's rights of visitation would naturally be affected by her actions, attorney fees and costs incurred in conjunction with these hearings are not expenses incurred in locating or returning the child, or causally related to the actual crime of custodial interference. Thus, the fees connected with Mr. Vinyard's representation in the separate domestic action were improperly granted under the restitution statutes.

Finally, medical expenses incurred by Mr. Vinyard as a result of a fall while in Arizona investigating his son's abduction were included in the order of restitution. We find no direct causal connection between Mrs. Vinyard's crime and Mr. Vinyard's accident. Thus, we conclude this expense was also improperly included in the order of restitution.

We have reviewed the other expenses listed by Mr. Vinyard, and included in the court's restitution order, and find them to be causally related to Mrs. Vinyard's crime, reasonable, and actually incurred in locating or returning the child. This would include the reward of $5,000 for help in locating the child in Texas, which, although only partially paid at the time of the restitution hearing, was incurred in that Mr. Vinyard was obligated by his offer to pay the entire amount.

We reverse the order of restitution and remand to the trial court to delete the following amounts from its order:

$41,500 to the Davidson Agency
144 for Mr. Vinyard's medical treatment
2,000 future attorney fees

On remand the trial court shall determine (1) whether and to what extent the expenses for psychiatric therapy, past and future, are "incurred" and causally related to Mrs. Vinyard's crime; (2) whether the past attorney fees were incurred in locating or returning the child or causally

related to the actual crime of custodial interference; and (3) whether any travel expenses incurred after the child's return were causally related to the crime, as, for example, if needed for medical treatment found to be a consequence of Mrs. Vinyard's crime. Only those expenses that are found to be causally related to the crime should be allowed.

Finally, we note the clear intent to liberally construe the restitution statutes. By our reversal here, we do not intend to sound any retreat from this approach. Nevertheless, while "[t]he legislature has expressed a strong desire that victims receive restitution from offenders", D. Boerner, *Sentencing in Washington* app. 1, comment § 9.94A.140, at I–10 (1985), it is reasonable to believe it did not intend to provide victims a blank check. The effect of the trial court's order here, if affirmed, would accomplish that unintended end.

Reversed and remanded.

McINTURFF, C.J., and GREEN, J., concur.