

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) DIVISION ONE
Respondent/Cross-Appellant, )
) No. 68020-0-I
v. )
) UNPUBLISHED OPINION
MICHAEL EMERIC MOCKOVAK, )
)
Appellant/Cross-Respondent. ) FILED: July 1, 2013
)

DWYER, J. — This case involves two challenges to an order of restitution. Following Dr. Michael Mockovak's convictions of attempted murder in the first degree and solicitation to commit murder in the first degree, the State sought $220,439.95 in restitution on behalf of Mockovak's intended victim, Dr. Joseph King. The trial court granted restitution with respect to certain medical expenses of King and his wife—totaling $1,543.34—but denied the State's remaining requests. Mockovak appeals from the trial court's restitution order, contending that it abused its discretion by ordering restitution for medical expenses that, he asserts, did not result from Mockovak's crimes. The State cross appeals, asserting that the trial court applied an unduly narrow legal standard in limiting restitution to King's medical expenses. We affirm the trial court in all respects.

I

Mockovak is the former co-owner of Clearly Lasik, Inc., a refractive eye surgery business operating surgical centers in both the United States and Canada. In 2009, over the course of several months, Mockovak plotted with Daniel Kultin, the information technologies director at the company, to arrange the murder of Mockovak's business partner, King, and to thereafter collect on a $4 million insurance policy. Unbeknownst to Mockovak, however, Kultin was working as an informant for the FBI. Kultin wore a concealed recording device during several of his conversations with Mockovak in which the two men discussed the plan to murder King. Ultimately, Mockovak gave Kultin a $10,000 payment for the murder along with a photograph of King and his family, with the intention that the money and photograph would be forwarded to the hired killers. Soon thereafter, Mockovak was arrested.

Following a jury trial, Mockovak was convicted of attempted murder in the first degree, solicitation to commit murder in the first degree, attempted theft in the first degree, and conspiracy to commit theft in the first degree.[1] The trial court sentenced Mockovak to a term of imprisonment within the standard range.

A restitution hearing was thereafter scheduled for September 22, 2011. The trial judge limited the issues to be presented at the hearing to legal issues regarding the limits of restitution.

The State requested restitution in the amount of $220,439.95. This

---

[1] We affirmed Mockovak's convictions in a decision filed May 20, 2013. State v. Mockovak, No. 66924-9-I, 2013 WL 2181435 (Wash. Ct. App. May 20, 2013). The details of the investigation leading to Mockovak's arrest and convictions are more fully set forth therein.

request was based on losses in four categories: (1) medical expenses; (2) travel expenses; (3) business expenses; and (4) legal expenses. The medical expenses, incurred by King and his wife, were "related to the stress imposed upon them by [Mockovak's] crime." The State requested restitution based upon a $10 payment for anxiety medication for King's wife and $1,533.34 for cardiology treatments for King.

The travel expenses were incurred by King, the State asserted, when he cut short his vacation in Australia upon learning of the plot against his life. The State requested that King be reimbursed $1,876 for a rental van payment.

The business expenses were incurred by two corporations, Clearly Lasik and King Lasik, Inc.[2] The State requested restitution in the amount of $26,615 based upon Clearly Lasik's hiring of a public relations firm, Sound Counsel Crisis Communications, in the aftermath of Mockovak's arrest. The State requested restitution of $8,460.49 based upon King Lasik's hiring of a replacement surgeon during the period that King attended Mockovak's criminal trial.

In addition, the State sought restitution for a number of legal expenses. These expenses related to the hiring by King of "attorneys to assist with witness preparation and other aspects of [Mockovak's] criminal trial," and the hiring of law firms by King and his businesses to "pursue civil claims for damage caused by [Mockovak's] crimes." In the first civil suit, the King family sought damages for "emotional distress, fear, embarrassment, humiliation, loss of consortium, damage to familial relationships, the loss of enjoyment of life, and financial harm"

---

[2] King incorporated King Lasik two weeks after Mockovak's arrest.

arising from Mockovak's actions. In the second civil suit, Clearly Lasik[3] asserted causes of action for breach of fiduciary duty and tortious interference with a business expectancy. The corporation additionally sought an injunction prohibiting Mockovak from entering any Clearly Lasik office or communicating with any Clearly Lasik "employee, supplier, creditor, customer, or financial institution." Finally, the State sought restitution based upon a $5,000 payment from King to Mockovak's ex-wife for legal fees relating to child custody and visitation proceedings involving Mockovak. The State requested legal expense restitution in the total amount of $181,945.12.

Following oral argument, the trial court denied restitution with regard to the majority of the claimed expenses. The court explained that these expenses were not "directly related" to Mockovak's crimes and that, accordingly, the expenses were not properly compensable as restitution.

The trial court then explained that it believed King's medical expenses to be potentially compensable.[4] At Mockovak's request, an evidentiary hearing was initially set for November 4, 2011 to determine whether King's medical expenses were a direct result of Mockovak's crimes. However, after King's medical records were furnished to the court, Mockovak indicated that the issue of restitution could be decided without oral argument. Accordingly, the evidentiary hearing was stricken.

---

[3] This lawsuit was also brought by King and Mockovak Eye Center, Inc., P.S., a closely-held business also co-owned by King and Mockovak.

[4] Mockovak did not contest the State's restitution request pertaining to the $10 prescription for King's wife.

On November 7, 2011, the trial court issued an order setting restitution at $1,543.34. King was designated as the recipient.

Mockovak appeals from the trial court's restitution order. The State cross appeals.

II

Mockovak contends that the trial court erred by awarding restitution—based upon the medical expenses of King and his wife—in the amount of $1,543.34 payable to King. We disagree.

The trial court's authority to order restitution is derived entirely from statute. State v. Smith, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992). Courts have broad discretion when determining the amount of restitution. State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005) (citing State v. Hughes, 154 Wn.2d 118, 153, 110 P.3d 192 (2005)). The trial court abuses its discretion where the restitution order is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. State v. Enstone, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999). The court's application of an incorrect legal analysis or other error of law can constitute an abuse of discretion. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

Restitution is required where "the offender is convicted of an offense which results in injury to any person or damage to or loss of property."[5] RCW

---

[5] A trial court may decline to order restitution where "extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record." RCW 9.94A.753(5). No such extraordinary circumstances were found to exist by the trial court in this case.

9.94A.753(5). The award must be "based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." RCW 9.94A.753(3). Restitution may not be awarded for "damages for mental anguish, pain and suffering, or other intangible losses." RCW 9.94A.753(3). However, a restitution award may include the "costs of counseling reasonably related to the offense." RCW 9.94A.753(3).

Restitution is allowed only for losses that are causally connected to the crimes charged unless the defendant expressly agrees to pay restitution for crimes for which he was not convicted. State v. Griffith, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008). "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." Griffith, 164 Wn.2d at 966 (citing Tobin, 161 Wn.2d at 524). The trial court cannot impose restitution based on a defendant's "'general scheme'" or acts "'connected with'" the crime charged, when those acts are not part of the charge. State v. Woods, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998) (quoting State v. Miszak, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)); accord Kinneman, 155 Wn.2d at 286.

Here, the trial court explained that restitution is proper where the "victim of an attempted, or inchoate murder" experiences stress that requires that person to "see a psychiatrist or counselor, or go to a cardiologist." The court noted, however, that in order to be compensable, such stress must result directly from the crime: "[A]s to these consequences that are caused by being in trial on a criminal case and how those impact the victim, I think the [Court of Appeals] is

- 6 -

going to say, 'We are sorry, but that is the cost of our justice system. You don't get repaid for it.'"

An evidentiary hearing was set for November 4, 2011 to determine the reasons for King's cardiology treatment. The court requested that King's doctor provide a letter to the court specifying whether the treatment at issue was directly related to King having been the victim of a threatened murder.

King's medical records were thereafter furnished to the court. The treating physician reported that King's chest pain occurred with stress. The doctor stated:

> His stress is related to professional issues. His business partner hired a hit man to kill him in an attempt to collect life insurance. There is now a criminal investigation going on and most of the professional work at his clinic has now been dumped on him. As well, he has to deal with the partner who is still part of the practice.

In the final assessment and plan, the doctor again noted: "[King] initially presented with occasional chest tightness secondary to extreme stress in his life. Apparently his business partner hired a hit man to kill him." Finally, in a letter to the court, the doctor stated that King's symptoms "were a direct result of stress suffered from criminal proceedings associated with his practice."

Following the trial court's receipt of these materials, Mockovak indicated that the issue of restitution could be decided without oral argument. Accordingly, the hearing set for November 4, 2011 was stricken. The trial court thereafter ordered restitution of $1,543.34 on November 7, 2011. King was designated as the recipient.

Mockovak asserts that the restitution award was improper because King's

medical treatment became necessary, not because King was the victim of an attempted murder, but as a result of Mockovak's criminal trial. Restitution in such circumstances is prohibited, Mockovak asserts, because it penalizes a defendant for exercising his or her constitutional right to a trial by jury. A crime victim will often suffer greater stress where the defendant elects to go to trial and, if higher restitution awards were permitted against such defendants, it would impermissibly chill the defendant's exercise of this constitutional right. As Mockovak correctly points out, "[t]he imposition of a penalty for the exercise of a defendant's legal rights violates due process." State v. Sandefer, 79 Wn. App. 178, 181, 900 P.2d 1132 (1995).

However, we need not address this constitutional question in order to resolve this issue. Imposition of restitution for injury incurred solely as the result of a criminal trial is not permissible because such an injury is not the result of the defendant's crime. A criminal trial does not occur in instances where a defendant simply pleads guilty to the charged offense. Instead, the trial occurs only where the defendant *chooses* to exercise his or her right to a jury trial. Such a decision, while "connected with" the crime charged, is not an act constituting a part of the charge. See Woods, 90 Wn. App. at 907-08. Accordingly, restitution cannot be imposed for injuries arising from this act. Kinneman, 155 Wn.2d at 286. Because the defendant's criminal trial does not directly result from the defendant's crimes, injuries that arise solely as a result of the trial are not compensable as restitution. See State v. Goodrich, 47 Wn. App. 114, 115, 733 P.2d 1000 (1987) (reversing imposition of restitution for victim's lost wages where

losses resulted from victim's trial attendance and not from injury).

Keeping these principles in mind, the award of restitution in this case was not improper. The trial court agreed with Mockovak that no restitution should be granted if King's need for treatment arose as a result of the stresses associated with Mockovak's trial. The court noted that restitution is improper where a person's need for therapy results from "tak[ing] the stand and being cross-examined by the defense." In such circumstances, the trial court explained, the costs of the counseling would not be compensable. Thus, in granting restitution for King's medical expenses, the court necessarily concluded that King's need for medical treatment did not arise as a result of the trial.

Nor did the trial court err by so concluding. King's doctor stated that King experienced chest pain "occur[ring] with stress." This stress related to "professional issues," which, the doctor explained, included Mockovak's hiring of "a hit man to kill [King] in an attempt to collect life insurance." In the doctor's final assessment and plan, she again noted that Mockovak's symptoms occurred with stress related to an incident in which King's "business partner hired a hit man to kill him." Such evidence was sufficient for the trial court to determine that King's need for medical treatment was the direct result of Mockovak's criminal acts.

Nevertheless, Mockovak contends that a letter from King's doctor, stating that King's stress resulted from "criminal proceedings associated with his practice," indicates that King's chest pain resulted solely from "Mockovak's trial and pretrial proceedings." However, it is unlikely that the doctor intended to give the term "criminal proceedings" a precise legal definition. Instead, this statement

- 9 -

may reasonably be interpreted to indicate that King's stress was the result of Mockovak's criminal activity, and the trial court attached this meaning to the words. If Mockovak wanted the doctor to more precisely parse out this statement, the evidentiary hearing—which Mockovak asked to be stricken— would have provided such an occasion. Based upon the evidence actually presented, however, the trial court properly determined that King's need for medical treatment flowed directly from the crime itself.

From the actual evidence presented and the reasonable inferences therefrom, the trial court concluded that it was King's discovery of his longtime business partner's plot to murder him that resulted in his medical expenses.[6] Sufficient evidence supports this determination. The trial court did not err by

---

[6] Mockovak also contends that the amount of restitution was improper because a portion of King's medical expenses was paid by Mockovak's insurance company. In preparation for the evidentiary hearing on restitution, King explained that with respect to his $1,533.34 medical bill, $695.70 had been paid by Premera Blue Cross and $837.64 had been paid by King. Mockovak asserts that the restitution statute limits reimbursement to the "actual expenses incurred" by the victim.

There is, however, no requirement that the restitution ordered be equivalent to the injury, damage, or loss. Kinneman, 155 Wn.2d at 282-83. "The trial court has great power and discretion in issuing restitution." Hughes, 154 Wn.2d at 153. Here, there was ample reason for the trial court to name King as the sole recipient of the restitution award. As King's insurer, Premera would have had either a contractual or an equitable right to subrogation. See Mahler v. Szucs, 135 Wn.2d 398, 411, 957 P.2d 632, 966 P.2d 305 (1998). The trial court unquestionably was aware of this. An insurer's entitlement to subrogation payments, however, arises only "after the insured is fully compensated for his loss." Thiringer v. Am. Motors Ins. Co., 91 Wn.2d 215, 219, 588 P.2d 191 (1978). Thus, until King received the full amount of his out-of-pocket expenses—$837.64—Premera would not be entitled to recover its loss.

By contrast, where multiple victims are designated to be the recipients of a restitution award, payments are distributed on a pro rata basis to the listed victims. See, e.g., State v. Shultz, 138 Wn.2d 638, 641, 980 P.2d 1265 (1999). Thus, if Mockovak was unable to pay the entirety of the restitution award, any order naming King's insurance company as a recipient of the award would result in a windfall to the company. Until King received $837.64, representing his out-of-pocket expenses, no right of reimbursement would exist in favor of Premera. Nonetheless, if the court had listed the company as a victim, Premera might have received payment even if King was not fully compensated for his loss. Given this possibility, the trial court properly listed King as the sole recipient of the award. The court wisely left the precise allocation of the restitution award to the relationship—contractual or equitable—between King and his insurer.

ordering restitution in the amount of $1,543.34 based upon the medical expenses of King and his wife.

III

Mockovak next asserts that the State's cross appeal of the trial court's restitution order is untimely and that the cross appeal must be dismissed. We disagree.

Where restitution is ordered following a criminal judgment, the order becomes part of the offender's sentence. State v. Dorenbos, 113 Wn. App. 494, 497, 60 P.3d 1213 (2002). A party may, of course, appeal from a final order entered after judgment. RAP 2.2(a)(13). However, only a "final order" is subject to such an appeal.

Here, the trial court issued two orders relating to restitution. In the first order, dated September 22, 2011, the trial court resolved several of the State's requests for restitution as a matter of law. The order did not, however, fully resolve the issue of restitution. Instead, following the entry of this order, the trial court scheduled an evidentiary hearing to determine the availability of restitution based upon the State's remaining requests. After Mockovak requested that this hearing be stricken, the trial court entered a second order entitled "order setting restitution" on November 7, 2011. In this order, the court set the final amount of restitution at $1,543.34.

Mockovak contends that, because the State's notice of appeal was not filed within 30 days of the trial court's first order, the State's notice of appeal seeking review of the issues decided in that order is untimely. However, the trial

court's first order was not a "final order after judgment" from which an appeal could be taken. Following entry of the September 22, 2011 order, the trial court remained free to exercise its discretion in setting the final amount of the restitution award. Thus, the trial court's restitution order did not become final until November 7, 2011, the date on which the matter of restitution was fully resolved by the trial court.

Mockovak appealed from the trial court's final order of restitution on December 5, 2011. After Mockovak filed his notice of appeal, the State was allotted "14 days after service of the notice" to file its own notice of appeal. RAP 5.2(f). The State filed this notice on December 15, 2011. Accordingly, the State's notice of appeal was timely.

IV

In its cross appeal, the State first contends that the trial court erred by determining that certain business expenses—incurred by Clearly Lasik and King Lasik during the period of Mockovak's criminal trial—were not the direct result of Mockovak's crimes and, thus, were not compensable as restitution. We disagree.

As our Supreme Court has explained, "funds expended by a victim as a direct result of the crime (whether or not the victim is an 'immediate' victim of the offense) can be a loss of property on which restitution is based." Kinneman, 155 Wn.2d at 287. Here, the claimed business expenses relate to two expenditures. First, the State requested restitution of $8,460.49 based upon King Lasik's hiring of a replacement surgeon to perform surgeries during "King's required

attendance at trial." Second, the State requested restitution of $26,615 based upon Clearly Lasik's hiring of "a public relations firm to ameliorate the harmful effects of [Mockovak's] conduct and the very public trial on the business." The trial court correctly determined that neither expense was a proper basis for restitution.

In the materials before the trial court, King admitted that King Lasik hired the replacement surgeon because of King's attendance at Mockovak's criminal trial. Such an expense, the State contends, would not have been incurred had Mockovak not committed his crimes and, thus, this expense was improperly excluded by the trial court in the award of restitution. However, as discussed above, Mockovak's criminal trial was not a direct result of Mockovak's crimes and, accordingly, any funds expended as the result of that trial are not compensable. See Goodrich, 47 Wn. App. at 115. The trial court did not err by determining that the cost of the replacement surgeon was not a proper basis for restitution.

Nor did the trial court err by determining that Clearly Lasik's expense in hiring the public relations firm was not compensable. The State asserts that this payment directly related to Mockovak's crimes:

> Certainly the reputation of Clearly Lasik suffered because one of its primary surgeons plotted and paid to have the other primary surgeon killed. Some patients or potential patients would be concerned about whether the clinics were a safe place to be. Other patients would be concerned about whether a business that employed Mockovak was making wise personnel decisions, and that other employees might be unstable or at least unreliable. It is also possible that other merchants would choose not to do business with an operation that appeared to be on such an

- 13 -

unstable footing. . . . The expenses incurred were between January 7, 2011, and February 10, 2011, when the crimes and the business were receiving maximum negative publicity, during the criminal trial.

Thus, the State argues, because "[i]t is likely that the public relations firm was hired to respond to these potential harmful consequences of Mockovak's crimes," this expense was compensable as restitution.

The trial court correctly rejected this argument for several reasons. First, insofar as the reasons for hiring the public relations firm related to Mockovak's exercise of his trial right, this cost is not compensable as restitution. As the State notes, the firm was hired during the period of Mockovak's criminal trial, when the "business [was] receiving maximum negative publicity." Any payments made to "ameliorate the harmful effects" of that trial were not a proper basis for restitution.

Second, the legislature has determined that restitution in a criminal case is not available for damages arising from "intangible losses." RCW 9.94A.753(3). Accordingly, damage to a corporation's reputation is not compensable as restitution. "Goodwill is property of an intangible nature . . . commonly defined as the expectation of continued public patronage." In re Marriage of Lukens, 16 Wn. App. 481, 483, 558 P.2d 279 (1976) (citing In re Marriage of Foster, 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974)). With regard to such intangible losses, the legislature has limited a victim's recovery to the "costs of counseling reasonably related to the offense." RCW 9.94A.753(3). The restitution statute does not authorize compensation for any other expenditure to mitigate an intangible loss.

This limitation represents a legislative determination regarding the proper scope of restitution in criminal cases. Clearly Lasik's hiring of a public relations

- 14 -

firm cannot, of course, be reasonably construed as "counseling" related to Mockovak's offense. Accordingly, for this reason as well, the trial court properly determined that this expenditure was not compensable as restitution.

Finally, even were restitution not precluded by the aforementioned principles, the trial court did not abuse its discretion by determining that Clearly Lasik's hiring of the public relations firm did not constitute a loss of property upon which restitution could be based. As noted above, only those funds expended by a victim as a "direct result of the crime" are compensable as restitution.[7] Kinneman, 155 Wn.2d at 287. Here, Mockovak was charged and convicted based upon his conduct in plotting the murder of King. The State offered evidence that, after scheming for several months, Mockovak gave Kultin $10,000 to hire hit men to kill King while he traveled in Australia. Kultin, however, was working as an informant for the FBI. No actual hit men were hired, and, accordingly, Mockovak's actions resulted in none of the negative consequences

---

[7] The State points to our Supreme Court's decision in State v. Hiett, 154 Wn.2d 560, 115 P.3d 274 (2005), for the proposition that *any* funds that would not have been expended "but for" an offender's criminal conduct are compensable as restitution. In that case, several juveniles took a motor vehicle without permission, and the vehicle was subsequently damaged during an attempt to elude the police. Hiett, 154 Wn.2d at 562-63. Although two passengers had jumped from the vehicle prior to the driver's attempt to elude, the court explained that, because damage to the vehicle would not have occurred "but for" the unlawful taking, the passengers were jointly and severally liable for the restitution award. Hiett, 154 Wn.2d at 566.

In so ruling, the court did not announce a radical new approach to the limits of restitution. Indeed, in that case, the damage to the victim flowed directly from the defendants' crimes. Reserving the question of whether principles of proximate cause should apply in the criminal context, the court noted that it was hardly "unforeseeable that a person guilty of taking a motor vehicle would . . . attempt to elude the police, or cause an accident." Hiett, 154 Wn.2d at 566.

Here, unlike the situation presented in Hiett, Mockovak's criminal acts caused no property damage. Nor did the expenditures of Clearly Lasik or King Lasik result directly from those crimes. Instead, King Lasik's need to hire a replacement surgeon arose solely as a result of Mockovak's trial. Similarly, Clearly Lasik's need to hire the public relations firm resulted from the negative publicity that surrounded Mockovak's arrest and trial. Given such disparate circumstances, Hiett has little applicability to the present case.

that he had intended.

Clearly Lasik incurred no costs as a direct result of Mockovak's criminal acts. Instead, as the State concedes, Clearly Lasik hired the public relations firm to address the negative publicity associated with Mockovak's arrest and trial. This publicity, however, did not result directly from Mockovak's criminal acts and, accordingly, any payments to ameliorate the effects of that publicity were not "funds expended . . . as a direct result of [Mockovak's] crime." Kinneman, 155 Wn.2d at 287. For all the reasons set forth above, the trial court did not abuse its discretion by determining that the companies' expenditures were not compensable as restitution.

V

The State next asserts that the trial court erred by declining to order restitution based upon $181,945.12 in legal fees incurred primarily by King and Clearly Lasik during civil litigation with Mockovak. However, the trial court properly concluded that such expenses did not directly result from Mockovak's crimes.

"[T]he criminal justice system is not a substitute for a civil judgment against a criminal defendant." State v. Moen, 129 Wn.2d 535, 542, 919 P.2d 69 (1996). "'[C]ompensation is not the primary purpose of restitution, and the criminal process should not be used as a means to enforce civil claims.'" Moen, 129 Wn.2d at 543 (quoting State v. Martinez, 78 Wn. App. 870, 881, 899 P.2d 1302 (1995)). Nevertheless, "[a]ttorney fees and costs may constitute damages on which restitution may be based, depending on the circumstances."

- 16 -

Kinneman, 155 Wn.2d at 288. The touchstone of the inquiry is whether the attorney fees were "'expended by the victim as a direct result of the crime.'" Tobin, 161 Wn.2d at 524 (quoting Kinneman, 155 Wn.2d at 287).

Our courts have determined that attorney fees and costs are compensable as restitution where they were expended in order to discover a crime or to recover property that was lost as a result of the crime. Kinneman, 155 Wn.2d at 288. Thus, "where the defendant was an attorney convicted of stealing from his clients and the victim had to pay attorney fees to obtain any recovery in the civil suit, the victim's attorney fees from the civil suit could be calculated as part of restitution." Tobin, 161 Wn.2d at 524-25 (citing Kinneman, 155 Wn.2d at 288). Similarly, where the defendant was convicted of custodial interference based upon the taking of a child, fees expended in locating and returning a missing child could properly be included in a restitution award. State v. Vinyard, 50 Wn. App. 888, 893-94, 751 P.2d 339 (1988).

On the other hand, where a separate civil action is not sufficiently connected to the defendant's crime, restitution is not authorized for attorney fees incurred in that action. Kinneman, 155 Wn.2d at 288. Thus, where the defendant's crime was custodial interference, attorney fees incurred by the defendant's husband in a separate visitation action were not sufficiently causally related to the crime to justify restitution. Kinneman, 155 Wn.2d at 288-89 (discussing Vinyard, 50 Wn. App. at 893-94). As we explained, "[a]lthough [the defendant's] rights of visitation would naturally be affected by her actions, attorney fees and costs incurred in conjunction with these hearings are not

- 17 -

expenses incurred in locating or returning the child, or causally related to the actual crime of custodial interference." Vinyard, 50 Wn. App. at 894. Accordingly, such attorney fees were improperly granted under the restitution statutes. Vinyard, 50 Wn. App. at 893-94.

Here, the State's restitution request was based upon several sets of legal expenses. First, the State sought restitution for King's hiring of "attorneys to assist with witness preparation and other aspects of [Mockovak's] criminal trial." Second, the State requested reimbursement for fees relating to a civil suit for damages brought by King and his family against Mockovak. Third, the State sought restitution based upon Clearly Lasik's expenses in "pursu[ing] civil claims for damages caused by [Mockovak's] crimes." Finally, the State sought reimbursement for a $5,000 payment by King to Mockovak's ex-wife for legal fees relating to child custody and visitation proceedings.

The trial court properly determined that none of these legal expenses were recoverable as restitution. With regard to King's legal fees relating to "witness preparation and other aspects of [Mockovak's] criminal trial," such expenses do not constitute a proper basis for restitution. As discussed above, because a defendant's criminal trial does not directly result from the defendant's crimes, expenditures that arise solely as the result of that trial are not compensable as restitution. The trial court did not err by declining to order restitution based upon legal fees incurred as a result of Mockovak's criminal trial.

The attorney fees relating to the King family's civil suit against Mockovak were also properly rejected. This lawsuit was an action for damages for "family

emotional distress, fear, embarrassment, humiliation, loss of consortium, damage to familial relationships, the loss of the enjoyment of life, and financial harm." However, as noted above, the restitution statute specifically excludes reimbursement for "mental anguish, pain and suffering, or other intangible losses." RCW 9.94A.753(3). Because the King family's lawsuit was an action for damages based upon such injuries, the trial court properly determined that restitution for expenses incurred as a result of initiating that lawsuit was unavailable.

Moreover, the King family's civil suit was dismissed by the trial court pursuant to CR 12(b)(6) for failure to state a claim.[8] In enacting the restitution statute, the legislature did not intend for a person, having expended funds in a meritless civil lawsuit, to thereafter recover those expenses by way of a criminal proceeding. "[T]he criminal justice system is not a substitute for a civil judgment against a criminal defendant." Moen, 129 Wn.2d at 542. The trial court did not err by denying restitution to recover these litigation expenses.

Similarly, the trial court correctly determined that Clearly Lasik's legal expenses—incurred prosecuting the company's lawsuit for damages based upon Mockovak's alleged breach of fiduciary duty and tortious interference with a business expectancy—were not compensable as restitution. That lawsuit was not initiated in order to discover a crime or to recover property that was lost as a result of the crime. See Kinneman, 155 Wn.2d at 288. Rather, the lawsuit was

---

[8] We affirmed that decision based upon the untimeliness of King's appeal. King v. Mockovak, No. 67479-0-I, 2013 WL 619545 (Wash. Ct. App. Feb. 19, 2013).

initiated to recover damages based upon financial injury to the company.[9]

Mockovak's crimes, however, did not directly result in such injury. Due to the efforts of law enforcement, Mockovak's attempt to hire a hit man to kill King was thwarted. Injury to Clearly Lasik resulted, if at all, not from Mockovak's criminal conduct but from Mockovak's arrest and subsequent prosecution. As discussed above, expenditures incurred as the result of a defendant's criminal trial are not compensable. Nor is damage to a company's reputation a loss that is subject to recovery pursuant to the restitution statute. The trial court properly determined that fees incurred in prosecuting this civil action were not sufficiently causally related to Mockovak's crimes to permit an award of restitution.

Finally, for similar reasons, the trial court properly rejected the State's remaining restitution request. The $5,000 payment by King to Mockovak's ex-wife was intended to finance her legal efforts in child custody and visitation proceedings against Mockovak. However, as our prior decisions make clear, such proceedings are not sufficiently causally related to Mockovak's crime to justify an award of restitution. See Vinyard 50 Wn. App. at 893-94 (holding that attorney fees incurred in conjunction with visitation proceedings are not expenses

---

[9] A claim for tortious interference with a business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy, (2) that defendants had knowledge of that relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) that defendants interfered for an improper purpose or used improper means, and (5) resultant damage. Manna Funding, LLC v. Kittitas County, ____ Wn. App. ____, 295 P.3d 1197, 1207 (2013).

The essential elements to pleading a breach of fiduciary duty cause of action under Washington law are: (1) that a fiduciary relationship existed which gave rise to a duty of care on the part of the defendant to the plaintiff; (2) that there was an act or omission by the fiduciary in breach of the standard of care; (3) that plaintiff sustained damages; and (4) that the damages were proximately caused by the fiduciary's breach of the standard of care. 29 David K. DeWolf, WASHINGTON PRACTICE: ELEMENTS OF AN ACTION § 12:1, at 347-48 (2012).

causally related to the actual crime of custodial interference). These expenses did not constitute a proper basis for restitution.

Because the legal expenses of King, his family, and Clearly Lasik were not incurred as the "direct result of [Mockovak's] crime," Kinneman, 155 Wn.2d at 287, the trial court did not err by denying these requests for restitution.

VI

The State's final contention is that the trial court erred by determining that King's travel expenses could not be properly included within the restitution award. We disagree.

King's asserted travel expenses relate to his payment for a rental van in Australia. The documents submitted to the trial court indicate that King made an advance payment of $1,876 in order to rent the van. King left Australia shortly after being informed of Mockovak's arrest and, accordingly, did not make use of the van for the entire rental period. The State thereafter sought restitution of $1,876 on King's behalf.

This request was properly denied for two related reasons. First, because King paid for the rental van before Mockovak committed his crimes, it cannot be true that King incurred this expense "as a direct result" of those crimes. Kinneman, 155 Wn.2d at 287. Second, in so far as King's request for restitution is based upon a loss of enjoyment resulting from the disruption of his vacation, such losses are not recoverable. Although it is true that King was unable to fully enjoy the use of the rental van, as discussed above, restitution cannot be granted based upon such intangible losses. RCW 9.94A.753(3).

The trial court correctly determined that the cost of the rental van was not the proper subject of its restitution award.

Affirmed.

We concur: