
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74345-7-I |
|  | ) | (consolidated with |
| Respondent, | ) | No. 74346-5-I) |
|  | ) |  |
| v. | ) | DIVISION ONE |
|  | ) |  |
| DOUGLAS ALLEN SAAR, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: October 9, 2017 |
|  | ) |  |

Cox, J. – RCW 9.94A.753(1) requires that restitution be set within 180 days of sentencing. In this case, Douglas Saar voluntarily accommodated the court's continuance beyond this period. By doing so, he waived the statutory deadline.

RCW 9.94A.753(3) allows restitution only for losses shown to be causally connected to the defendant's crime. Here, Saar's crimes caused the fees and lost profits for which restitution was sought. Thus, the trial court did not abuse its discretion in setting restitution. We affirm.

Around 2010, Saar defaulted on his financial obligations and faced foreclosure. A practicing attorney during the same period, he assisted Edwin Upton in drafting a living trust ("the trust"). In this capacity, Saar amended the trust to substitute himself in place of Kevin Upton, Edwin's son, as successor

trustee. After Edwin Upton died, Saar wrote several checks from the trust and deposited them in his personal accounts, from which he serviced his outstanding debts.

Kevin Upton eventually petitioned to remove Saar as trustee. The trial court granted this motion and replaced Saar with H. Clarke Harvey. Saar continued to deceive and delay in reporting his handling of the trust funds to Harvey.

The State later charged Saar, by amended information, with two counts of first degree theft and one count of money laundering. Saar pleaded guilty, as charged, and agreed to pay restitution to be set at a later date. The trial court sentenced him on February 6, 2015, to 14 months confinement.

The trial court held a restitution hearing on July 24, 2015. Saar argued then that the trial court should not include within its restitution order various fees incurred by the Upton Trust and Kevin Upton. The trial court requested billing records from Kevin Upton's attorney, Carolyn Cliff, before it would determine restitution. The State provided these records to the court and to Saar.

On July 28, 2015, the trial court sent a letter to the parties, informing them that it had reviewed the additional documentation and directing that they file any challenges no later than August 7, 2015. Neither party submitted challenges.

The trial court finally ordered restitution by letter ruling dated August 21, 2015, and filed August 26, 2015. Restitution was set at $138,076.90. The trial court later entered formal findings of fact and conclusions of law. It explained that it had "found good cause for delay . . . in order to provide [Saar] with an

appropriate opportunity to respond to the voluminous additional documentation and the court with an appropriate opportunity to formulate the court's ruling."[1]

Saar appeals.

## TIMELINESS

Saar argues that the trial court lacked statutory authority to set restitution more than 180 days after sentencing. We disagree.

A sentencing court's authority to impose restitution derives entirely from statute.[2] Thus, a trial court cannot enter a restitution order that does not comply with controlling statutes.[3] Such an order is void.[4]

Standard principles of waiver and equitable tolling apply to the statute of limitations for restitution orders.[5] A party may waive a statute of limitations by "'engaging in conduct that is inconsistent with that party's later assertion of the defense' or 'by being dilatory in asserting the defense.'"[6] A party engages in such inconsistent conduct when he voluntarily accommodates a request to continue the statute of limitations when not required to do so.[7]

---

[1] Clerk's Papers at 8.

[2] State v. Kerow, 192 Wn. App. 843, 846, 368 P.3d 260, review denied, 186 Wn.2d 1007 (2016).

[3] Id.

[4] Id.

[5] Id. at 847-48.

[6] Id. at 848 (quoting State v. Grantham, 174 Wn. App. 399, 404, 299 P.3d 21 (2013)).

[7] Id.

We review for abuse of discretion a trial court's restitution order.[8] A trial court necessarily abuses its discretion when it exceeds its statutory authority.[9]

RCW 9.94A.753 governs restitution orders. Subsection RCW 9.94A.753(1) requires that "[w]hen restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days." But "[t]he court may continue the hearing beyond the one hundred eighty days for good cause."[10]

This court's recent opinion in State v. Kerow is instructive.[11] Elyas Kerow had pleaded guilty to vehicle prowl and was duly sentenced.[12] The sentencing court had ordered restitution to be determined at a later hearing.[13] That hearing took place about two weeks before the statute of limitations would have passed.[14] Kerow argued at that hearing that the State's documentation of loss was insufficient.[15] The trial court thus "directed the parties to set the hearing 'over to a date that *you both agree on.*'"[16]

---

[8] Id. at 846.

[9] Id.

[10] RCW 9.94A.753(1).

[11] 192 Wn. App. 843, 846, 368 P.3d 260 (2016).

[12] Id. at 845.

[13] Id.

[14] Id.

[15] Id.

[16] Id.

That second hearing took place six days after the statute of limitations would have passed.[17] Kerow argued that the trial court "lacked authority to order restitution because the statutory deadline had passed due to the court's failure to make a finding of good cause to continue beyond the 180-day deadline."[18] The trial court continued the matter to allow the State time to research whether the trial court retained the necessary authority.[19] It entered an order determining restitution at that third hearing.[20]

This court affirmed that order. This court concluded that Kerow had engaged in conduct inconsistent with asserting the statute of limitations.[21] Specifically, this court explained that Kerow "could have insisted that the continued hearing be set no later than [the statutory deadline], within 180 days after Kerow's judgment and sentence, but he did not do so."[22] This was effectively an agreement to continue the hearing, and thus effected a waiver of the statutory time limit.[23]

Here, the trial court imposed restitution on August 26, 2015. The 180 day statutory deadline passed on August 5, 2015. Thus, the trial court's restitution

---

[17] Id.

[18] Id. at 845-46.

[19] Id. at 846.

[20] Id.

[21] Id. at 848

[22] Id.

[23] Id. at 848-49.

was void unless good cause existed. Specifically, the question is whether Saar waived the statute of limitations. Regarding waiver, the dispositive fact is the letter sent by the court on July 28, 2015. That letter directed the parties to file challenges to new evidence no later than August 7. Saar filed no challenge, either to the merits of the documentation or to this extension beyond the statutory time limit. That extension included at least two days to allow challenges to be filed and resolved.

Kerow is analogous. As there, restitution proceedings were continued beyond the statutory deadline. Saar, like Kerow, could have challenged that decision. This was especially so since the delay was ordered for his benefit. But like Kerow, he waited until afterwards to raise this challenge. Thus, like Kerow, Saar waived the statute of limitations by "engaging in conduct that is inconsistent with [his] later assertion of the defense," and "by being dilatory in asserting the defense."[24] There was good cause, as the trial court decided, to impose restitution beyond the 180-day period.

## AMOUNT OF RESTITUTION

Saar argues that the trial court abused its discretion in ordering him to pay restitution for attorney fees, successor trustee fees, successor trustee attorney fees, and lost profits that the Upton Trust incurred, allegedly without evidence of causal connection to Saar's crimes. We disagree.

---

[24] Id. at 848 (quoting Grantham, 174 Wn. App. at 404).

RCW 9.94A.753(3) requires "restitution ordered by a court pursuant to a criminal conviction [to] be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." Restitution cannot be based on intangible losses and cannot exceed "double the amount of the offender's gain or the victim's loss."[25]

Unless the defendant concedes the amount of restitution, the State must prove by a preponderance of the evidence both the amount of the losses and their causal connection to the crimes charged.[26] Restitution need not be proven with specific accuracy.[27] The State's evidence is sufficient if it provides a "'reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'"[28]

Losses are causally connected if the victim would not have incurred the losses "but for" the defendant's crime.[29] The losses cannot be causally connected only to a "'general scheme,' 'acts connected with' the crime charged, or uncharged crimes unless the defendant enters into an express agreement to

---

[25] RCW 9.94A.753(3).

[26] State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007).

[27] State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005).

[28] Id. (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005)).

[29] Tobin, 161 Wn.2d at 524.

pay restitution in the case of uncharged crimes."[30] The losses need not have been foreseeable.[31]

Restitution may include "funds expended by a victim as a direct result of the crime (whether or not the victim is an 'immediate' victim of the offense)."[32] For example, restitution may include "investigative costs that are 'reasonably and rationally related to the crime and consequential in the sense that but for the [crime], the victim would not have incurred them.'"[33] Such costs are recoverable, even if incurred prior to the offensive conduct.[34] It may also include the cost of remedial steps the victim must take to recover from loss.[35] Notably, these "funds expended" may include attorney fees.[36]

We review for abuse of discretion, the trial court's determination of the amount of restitution.[37]

---

[30] Kinneman, 155 Wn.2d at 286 (quoting State v. Woods, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998)).

[31] Id. at 285.

[32] Id. at 287.

[33] Tobin, 161 Wn.2d at 525 (quoting Kinneman, 155 Wn.2d at 287)).

[34] State v. Forbes, 43 Wn. App. 793, 799-800, 719 P.2d 941 (1986).

[35] Tobin, 161 Wn.2d at 520-23.

[36] Kinneman, 155 Wn.2d at 288-89.

[37] Tobin, 161 Wn.2d at 523.

State v. Kinneman is particularly helpful in this case.[38] Zachary Kinneman had been an attorney hired to act as escrow and to close five real estate refinance transactions.[39] He made several sizeable and unauthorized withdrawals from funds deposited in his trust account for this purpose.[40] The State charged him with theft, for which he was convicted.[41]

A restitution hearing was held after sentencing. The trial court ordered Kinneman to pay restitution to, amongst others, Old Republic, a title insurance company injured by Kinneman's crime.[42] Old Republic claimed that Kinneman had caused it to incur causally related attorney fees but the trial court declined to include these in the restitution order.[43]

Kinneman appealed and the State cross-appealed. The supreme court held that the trial court had abused its discretion in declining to include the attorney fees. It explained that the American rule governing fee awards "simply ha[s] no place in the criminal restitution scheme."[44] Instead, the court held that "[a]ttorney fees and costs may constitute damages on which restitution may be

---

[38] 155 Wn.2d 272, 119 P.3d 350 (2005).

[39] Id. at 275.

[40] Id. at 276.

[41] Id.

[42] Id.

[43] Id. at 277.

[44] Id. at 288.

based, depending on the circumstances."[45] For example, if a victim brought a civil suit to recover for theft by her attorney, and incurred fees in the litigation, the trial court determining criminal restitution for the theft could include those fees.[46] This was because the victim had incurred those fees as a direct result of the theft.[47]

But the court referenced an important limitation, as expressed by Division Three of this court in State v. Vineyard.[48] In that case, Suzanne Vineyard had unlawfully taken her son from his father's custody.[49] She was charged with and pled guilty to custodial interference.[50]

In setting restitution, the trial court, included attorney fees the father had incurred in challenging Vineyard's visitation rights.[51] Division Three explained that "[a]lthough Mrs. Vineyard's rights of visitation would naturally be affected by her actions, attorney fees and costs incurred in conjunction with these hearings are not expenses incurred in locating or returning the child, or causally related to

---

[45] Id.

[46] Id.

[47] Id.

[48] Id. at 288-89 (citing State v. Vinyard, 50 Wn. App. 888, 894, 751 P.2d 339 (1988)).

[49] Vinyard, 50 Wn. App. at 889.

[50] Id.

[51] Id. at 894.

the actual crime."[52] Thus, Division Three reversed the trial court because while this separate action was affected by the crime, it did not directly result from the crime.[53]

Restitution may also be ordered for consequential losses that indirectly flow from the defendant's crime. RCW 9.94A.753(3) explicitly authorizes the trial court to order restitution for the victim's lost wages. Two limitations apply. First, such damages must have been already incurred.[54] Second, because the damages must be "'easily ascertainable'" their calculation cannot depend upon a difficult "judgment call" best left to a civil trier of fact who has reviewed "sophisticated proof."[55] Thus, for example, this court has reversed a restitution order that included a victim's future earnings losses.[56]

Here, the challenged restitution included both fees paid to Cliff, Harvey as successor trustee, and Harvey's attorney, as well as consequential profit losses caused by the withdrawals. Regarding fees, the State provided extensive billing records, detailing the services for which attorney and trustee fees were incurred. This documentation also includes affidavits and declarations from Cliff, Harvey, and Harvey's attorney, detailing the chain of causation between Saar's criminal

---

[52] Id.

[53] Id.

[54] State v. Lewis, 57 Wn. App. 921, 926, 791 P.2d 250 (1990).

[55] Id. at 924 (quoting former RCW 9.94A.142, recodified as RCW 9.94A.753).

[56] Id. at 925.

malfeasance regarding the trust, and these incurred fees. Specifically, they detailed how the fees were incurred in protecting the trust, investigating Saar's conduct, and protecting the trust's interests through various proceedings. This record provides a sufficient basis for the trial court to find that the restitution sought resulted from Saar's crimes. And based on Kinneman, such fees were recoverable in restitution. The trial court did not abuse its discretion in this regard.

Neither did the trial court abuse its discretion in awarding lost profits. Such profits are analogous to lost wages, explicitly recoverable under the governing statute. Just as a victim who suffers physical injury incurs lost wages, so the trust that suffers financial injury may incur lost profits that its assets would have otherwise generated. Further, the trial court had discretion to award restitution up to double the amount of the withdrawals themselves. The State offered documentation and computerized methodologies explaining the extent to which the trust would have appreciated but for the criminal withdrawals.

Its evidence did not offend the limitations on recovery of lost wages discussed above. The State sought only lost profits already incurred. And it did so on an easily ascertainable basis that required only a minor judgment call between two offered recommendations. Saar does not contest the methodologies offered.

Thus, the trial court did not abuse its discretion in imposing the full amount of restitution, $138,076.90.

We affirm the restitution order.

_____ COX, J.

WE CONCUR:

_____ Leach, J.

_____ Dwyer, J.