

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | No. 76044-1-I |
| ) | |
| Respondent, ) | DIVISION ONE |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| PETER WILLIAM KRAMER, ) | |
| ) | |
| Appellant. ) | FILED: April 30, 2018 |

TRICKEY, J. — Peter Kramer pleaded guilty to one count of second degree identity theft based on his theft and unauthorized use of the names and social security numbers of Mala, Ramesh, and Anuraag Polisetty.[1] The trial court ordered Kramer to pay the cost of 12 months of credit monitoring to the Polisettys as restitution. Kramer appeals this restitution order. Because the credit monitoring required an expenditure of funds as a direct result of Kramer's crime, we affirm.

## FACTS

In May 2015, Mala accidentally left her wallet at the store where Kramer worked. Her wallet contained a note with the social security numbers of her family members written on it, including her husband, Ramesh, and their son, Anuraag. When Mala returned to retrieve her wallet, it was gone. The Polisettys subsequently received a number of letters from credit card services informing them of credit card applications in their names. These applications were unauthorized.

---

[1] Because they share the same last name, we will refer to the Polisettys by their first names as required. No disrespect to the parties is intended.

At the time of the theft, Kramer lived with his parents. His mother discovered forged documents in Kramer's room. These documents included a forged driver's license and checks in the names of Ramesh and Anuraag. She reported her findings to the police.

Kramer was charged with one count of identity theft in the second degree based on his unauthorized use of the identification and financial information of Mala, Ramesh, and Anuraag. He pleaded guilty to the charge.[2]

The State asked for restitution of $576.00 to the Polisetty family for the cost of 12 months of credit monitoring for Mala, Ramesh, and Anuraag.[3] The trial court granted the State's request over Kramer's objection.

Kramer appeals.

## ANALYSIS

Kramer contends that the trial court did not have authority to order restitution for the cost of credit monitoring. He argues that the credit monitoring was protection against future loss and that the Polisettys did not suffer any actual financial loss as a direct result of the crime. Because the credit monitoring was an easily ascertainable expense incurred as a direct result of the crime, we disagree.

The authority to order restitution is derived entirely from statute. State v. Smith, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992). The legislature has granted broad powers of restitution to the trial court. State v. Davison, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991). The restitution statutes were intended to require the

---

[2] Kramer was also charged with additional crimes relating to theft of his parents' property and pleaded guilty to trafficking in stolen property in the first degree—domestic violence. Kramer has not appealed this charge.
[3] The cost of credit monitoring was $16 per month for each of the three family members.

defendant to face the consequences of his or her criminal conduct. Davison, 116 Wn.2d at 922.

Restitution is authorized "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5). Restitution for injury to or loss of property must be based on easily ascertainable damages. RCW 9.94A.753(3). "[F]unds expended by a victim as a direct result of [a] crime . . . can be a loss of property on which restitution is based." State v. Kinneman, 155 Wn.2d 272, 287, 119 P.3d 350 (2005). The losses must be causally connected to the charged crime. State v. Tobin, 161 Wn.2d 517, 525, 166 P.3d 1167 (2007). Washington courts apply a but-for analysis to determine whether the injury was caused by the crime. State v. Velezmoro, 196 Wn. App. 552, 557, 384 P.3d 613 (2016), review denied, 187 Wn.2d 1023, 390 P.3d 345 (2017).

The State bears the burden of proving the amount of restitution by a preponderance of the evidence. Tobin, 161 Wn.2d at 524. Evidence is sufficient to satisfy this standard if it affords a reasonable basis for estimating the loss and does not depend on "'mere speculation or conjecture.'" State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (internal quotation marks omitted) (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).

"A trial court's order of restitution will not be disturbed on appeal absent [an] abuse of discretion." Tobin, 161 Wn.2d at 523. Application of an incorrect legal

3

analysis can constitute an abuse of discretion. Tobin, 161 Wn.2d at 523. Additionally, a trial court exceeds its statutory authority by ordering restitution where the loss suffered is not causally related to the offense. State v. Vinyard, 50 Wn. App. 888, 891, 751 P.2d 339 (1988).

The Polisettys acquired credit monitoring because they had received notices of unauthorized credit card applications in their names. The Polisettys expended the funds to protect their credit and remedy any potential problems resulting from Kramer's theft of their identities. Further, the need for credit monitoring was clearly demonstrated by their receipt of notices of unauthorized credit card applications. But for Kramer's theft of their identities, the Polisettys would not have required credit monitoring. As a result, the expense of 12 months of credit monitoring represents "funds expended by a victim as a direct result of the crime," and satisfies the causation requirement for restitution. See Kinneman, 155 Wn.2d at 287; Tobin, 161 Wn.2d at 524.

Kramer argues that restitution cannot be awarded for credit monitoring because this service protects from future harm akin to security cameras installed subsequent to a burglary. But in this case, the credit monitoring was not merely proactive protection from future harm. The Polisettys had already been notified of unauthorized applications for credit cards using their identities. Therefore, the 12 months of credit monitoring serve as a means of assessing both the current and future impact of Kramer's crime.

Restitution has been awarded for expenditure of funds to ascertain the full extent of the loss resulting from a defendant's crimes. In Tobin, the State was

entitled to restitution for the costs to resurvey geoduck tracts after the defendant's illegal harvesting of almost 200,000 pounds of geoduck. 161 Wn.2d at 521, 530. The Washington Supreme Court determined that the impact of the illegal harvesting could not be accurately assessed and overfishing could result without a new survey. Tobin, 161 Wn.2d at 530. As a result, the need to resurvey was a direct cost of the defendant's offense. Tobin, 161 Wn.2d at 530.

Similarly, the full repercussions of Kramer's crime would remain unknown and debt or damage to the Polisettys' credit could accrue, without credit monitoring. The Polisettys have no alternate means of assessing the harm and protecting themselves from the extent of the damages caused by Kramer's crime. Requiring Kramer to pay for the cost of short term credit monitoring gives the Polisettys a necessary remedy and requires Kramer to face the consequences of his crime.

Finally, we reiterate that the request for 12 months of credit monitoring arose after the Polisettys received notices of unauthorized attempts to obtain credit cards in their names. The need for credit monitoring was not speculative and the cost of the service was easily ascertainable.[4] The 12 months of credit monitoring was not excessive. As a result, we conclude that the trial court did not abuse its

---

[4] Kramer contends that the record does not establish that the cost of the full 12 months of credit monitoring had been incurred. Restitution is only allowed for expense the victim is already obligated to pay. Vinyard, 50 Wn. App. at 892. This issue was not raised in the trial court and, therefore, has not been preserved for review. RAP 2.5(a); Trueax v. Ernst Home Ctr., Inc., 124 Wn.2d 334, 339, 878 P.2d 1208 (1994). Furthermore, the restitution order was filed on October 5, 2016. The 12 months of allotted credit monitoring services have certainly elapsed and the entire cost has been incurred by the time of this decision.

discretion in awarding the Polisetty's $576.00 in restitution for the cost of 12 months of credit monitoring.

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, J._          _Becker, J._