[Nos. 16216-4-II; 16593-7-II.   Division Two.   August 2, 1995.]

The State of Washington, *Respondent*, v. Joe Edward Martinez, *Appellant*.

*James F. Imperiale* and *Griffin & Imperiale*, for appellant.

*James J. Stonier, Prosecuting Attorney,* and *Lindsay Taylor Thompson (special prosecutor),* for respondent.

*Thomas M. Jones* and *Scott A. Kallander,* amici curiae.

FLEISHER, J. — The appellant, Joe Edward Martinez, was convicted of first degree arson after a fire damaged his motorcycle dealership. Martinez was ordered to pay restitution to the building owner and to Universal Underwriters Insurance Company (Universal). We hold that the trial court did not err in denying Martinez's motion to dismiss for due process violations or in denying admission of certain expert testimony for the defense. However, we hold that criminal restitution statutes do not allow for recovery of arson investigation costs and attorney fees. Accordingly, we affirm the conviction and reverse the restitution award to Universal.

## FACTS

On Saturday evening, February 18, 1989, a fire damaged Martinez's motorcycle dealership in Longview. Martinez was the last person in the building that evening, leaving shortly after 6:30 P.M. The fire was reported at 6:45 P.M. by a passerby who saw smoke coming out of the

building. Fire fighters arrived quickly and the fire was put out in a matter of minutes.

The Longview Fire Marshall was out of town, so Alan Headley, the Cowlitz County Fire Marshall, was asked to do an initial examination of the fire scene. Headley found that the area of greatest damage was in the northeast corner of the parts room, upstairs from the showroom. Based on the burn patterns on the floor, Headley concluded the fire had been set after a liquid accelerant was poured on the floor in that area. A state fire marshall, Duane Dormaier, also concluded that the fire had been intentionally set using a flammable liquid. The fire scene was never sealed off as a crime scene.

On Monday morning, February 20, Martinez notified his insurance company, Universal, of the fire. Universal responded almost immediately that there was no coverage for the loss; later, Universal said that only the contents of the building were insured and not the building itself.[1] Martinez, who leased the building, had already made plans to move to a new location in Longview, consolidating his Longview and Astoria, Oregon, dealerships because the latter was losing money.

Universal sent an investigator, Dean Bundy, to investigate the fire on February 20. Bundy interviewed employees, examined the damage, and soon concluded that the fire had been set by someone who poured a flammable liquid on the upstairs floor and lit it. Within a few days of the fire, Universal notified the Longview Police Department that it believed the fire was arson.

There was evidence that the furnace in the building was in a poor state of repair, and Martinez and some of his employees blamed it for the fire. The furnace had been repaired a week or two before the fire. The repair company told Martinez that it had only been able to make partial repairs to the furnace and that it would not be responsible

---

[1]In November 1989, Martinez filed a civil suit against the insurance company to collect on his policy; that lawsuit was dismissed after Martinez was convicted of arson.

for damage caused by its extended use. Bundy concluded that the furnace could not have caused the fire. The building's owner repaired the fire damage in August 1989, and the furnace was replaced at that time. The owner apparently discarded the old furnace.

The investigation soon began to focus on Martinez as the person who had set the fire. The Federal Department of Alcohol, Tobacco, and Firearms (ATF) became involved in the investigation. At the request of the Longview police, ATF began looking into Martinez's financial situation. This led to a lengthy audit of his financial records in an effort to establish the motive for the arson. Because of the delay involved in the audit and a backlog at the prosecutor's office, Martinez was not charged until December 20, 1990. At his arraignment the following month, Martinez waived his right to a speedy trial.

The prosecutor alleged that Martinez set the fire to collect the insurance proceeds because he was having serious financial difficulties. The ATF auditor testified that the Longview dealership had been losing money since Martinez had purchased it four months before the fire.

During 1991, various discovery hearings were held. The defense repeatedly complained that Universal, its attorneys and its investigator were not providing discovery materials. Trial began on March 11, 1992, and lasted almost three weeks. Before trial, the defense moved to dismiss because of the delay in charging Martinez. The trial court denied the motion.

At trial, Bundy testified extensively regarding his conclusion that the fire had been intentionally set. The defense also called an expert, Robert Lowe, who disputed much of Bundy's testimony. Lowe had not been able to examine the fire scene, but he interviewed many of the same witnesses that Bundy had interviewed. Lowe testified that the furnace, not arson, had caused the fire. He also testified to the findings that led him to that conclusion. However, the trial court did not allow Lowe to testify about what witnesses had told him if their trial testimony differed, or if they had not testified at trial.

A jury found Martinez guilty of first degree arson. The trial court sentenced Martinez to 25 months' confinement and ordered him to pay nearly $83,000 in restitution to the owner of the fire-damaged building. At a later restitution hearing the court additionally ordered Martinez to pay $199,622.47 to reimburse Universal for its costs.

## A
### Motion To Dismiss

■ Under CrR 8.3(b), "[t]he court on its own motion in the furtherance of justice . . . may dismiss any criminal prosecution . . . ." The trial court's decision is reviewable only for manifest abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). Dismissal of a prosecution is appropriate only when the defendant shows arbitrary action or governmental misconduct. *Blackwell*, 120 Wn.2d at 831.

Martinez makes three arguments regarding the trial court's refusal to dismiss the charge against him. All three are premised on alleged violations of his due process rights. He first argues that the State failed to preserve material exculpatory evidence (the furnace). Second, Martinez argues that the investigation into the fire was not fair and impartial because it was conducted primarily by the insurance company's investigator. Third, he argues that the delays in charging him with arson and trying him for the crime were unreasonable and prejudicial.

■ CrR 4.7(a)(4) requires the prosecuting attorney to disclose all "material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." Martinez's first argument fails because the furnace does not fall within the scope of the rule. The furnace was never in the possession or control of the prosecutor's office or the police.

■ Even if we assume that the rule applies to the furnace, violation of procedural rules of discovery does not necessarily mean a defendant's constitutional right to due

process has been violated. *State v. Bartholomew*, 98 Wn.2d 173, 205, 654 P.2d 1170 (1982), *rev'd on other grounds*, 463 U.S. 1203 (1983). The due process right to obtain evidence applies only to evidence favorable to the defendant and material to guilt or punishment. *Blackwell*, 120 Wn.2d at 828 (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)).

To be material, " 'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *State v. Straka*, 116 Wn.2d 859, 883-84, 810 P.2d 888 (1991) (quoting *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)).[2] Here, the first prong of the materiality test cannot be met. The evidence at issue was not in the control or possession of the prosecutor or police, nor did it have apparent exculpatory value before it was destroyed. The police began to suspect arson within a few days of the fire; however, because the insurance investigator, the county fire marshall and the state fire marshall had all ruled out the furnace as a cause of the fire, the police never made an effort to obtain it. Evidence which was not obtained cannot be preserved. *State v. Wasson*, 54 Wn. App. 156, 161, 772 P.2d 1039, *review denied*, 113 Wn.2d 1014 (1989). Moreover, the prosecutor does not have a duty to seek out exculpatory evidence. *State v. Woolbright*, 57 Wn. App. 697, 701, 789 P.2d 815 (1990).

Martinez's second argument is that he was prejudiced by the fact that the insurance company, rather than the police, conducted the primary investigation. No case law directly addresses this issue, but courts have held that simple mismanagement may constitute governmental

---

[2]Evidence is not material if there is only the possibility that it might have helped the defense or affected the outcome at trial. *Blackwell*, 120 Wn.2d at 828. If police fail to preserve nonmaterial evidence, there is no due process violation unless the defendant can show the police acted in bad faith. *Straka*, 116 Wn.2d at 884. Here, Martinez has not alleged, and the facts do not indicate, that the prosecutor acted in bad faith.

misconduct and thus require dismissal of a prosecution under CrR 8.3(b). *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980).

Martinez argues that the State mismanaged the investigation when it relied primarily on the insurance company's investigation, and Longview failed to undertake a complete independent investigation. However, both the Cowlitz County fire marshall and the state fire marshall investigated the fire, and Martinez had the opportunity to cross-examine the State's experts and to present his own expert witness.

Moreover, the discovery process was conducted under the trial court's supervision. Thus, a neutral and unbiased party ensured that Martinez had access to all the evidence he needed to present a defense. In these circumstances, Martinez's due process rights were not violated by the investigation.

Martinez's third argument is that the delays in charging and trying him were unreasonable and prejudicial. He was charged twenty-two months after the fire, and his trial was held thirty-seven months after the fire. The statute of limitations for arson is ten years. RCW 9A.04.080(1)(b)(ii).

▮▮ Both the federal and state constitutions guarantee an accused a speedy trial. *State v. Boseck*, 45 Wn. App. 62, 65, 723 P.2d 1182 (1986) (citing U.S. Const. amend. VI; Wash. Const. art. I, § 22). While delay between an alleged criminal occurrence and the filing of charges does not violate the speedy trial guarantee, such a delay may violate an accused's due process rights. *State v. Potter*, 68 Wn. App. 134, 139, 842 P.2d 481 (1992).

Washington courts use a three-part test for determining when precharging delay violates due process: " '(1) The defendant must show he was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3) if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.' " *State v. Chavez*, 111 Wn.2d 548, 558, 761 P.2d 607 (1988) (quoting *State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987)).

Applying the first prong of the *Chavez* test, Martinez has not shown he was prejudiced by the delay. The delay between charging Martinez and bringing him to trial was due in large part to discovery problems, but Martinez ultimately got the documents he was seeking. There is no indication that this delay prejudiced his ability to prepare an adequate defense. Martinez argues that witnesses his expert tried to contact were no longer available because of the delay; however, "[s]imply alleging 'that witnesses are unavailable or the memories have dimmed is insufficient.'" *Potter*, 68 Wn. App. at 142 (quoting *State v. Gee*, 52 Wn. App. 357, 367, 760 P.2d 361 (1988), *review denied*, 111 Wn.2d 1031 (1989)). If an accused does not show actual prejudice, the second and third prongs of the test need not be considered. *Potter,* 68 Wn. App. at 143.

For these reasons, Martinez's due process rights were not violated, and the trial court did not abuse its discretion in refusing to dismiss the charge.

## B

### Expert Witness Testimony

■ Martinez argues that the trial court erred in restricting the testimony of his expert witness, Mr. Lowe. The standard of review for admission of testimony is abuse of discretion. *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 459, 746 P.2d 285 (1987). To constitute grounds for reversal, an error must be prejudicial—that is, it must affect or presumptively affect the final result of the trial. *State v. Eaton*, 30 Wn. App. 288, 295, 633 P.2d 921 (1981). When an error is not of constitutional magnitude, it is cause for reversal only if the appellate court concludes it is reasonably probable that the error materially altered the outcome of the trial. *Eaton*, 30 Wn. App. at 295-96.

Here, the defense sought to have Lowe explain the basis for his opinion about the cause of the fire. Lowe was allowed to testify at length regarding his opinion that the furnace, not arson, caused the fire. However, the trial court ruled that Lowe could not testify regarding certain

statements others had made to him during his investigation, if the statement differed from the person's testimony at trial or if the person was not a witness at trial.

ER 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In addition, ER 705 provides:

> The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

■ Thus, under ER 705, experts need not disclose the basis for their opinions unless the court so requires. While ER 703 allows an expert to base an opinion on facts or data reasonably relied on by experts in their field, even if these facts or data are otherwise inadmissible, when the court admits such testimony it is not substantive evidence. *Group Health Coop. of Puget Sound, Inc. v. Department of Revenue*, 106 Wn.2d 391, 399-400, 722 P.2d 787 (1986). That is, it is not offered to prove its truth and thus does not contravene the rule against hearsay.

Although the trial court may allow disclosure of underlying facts or data, "courts have been reluctant to allow the use of ER 705 as a mechanism for admitting otherwise inadmissible evidence as an explanation of the expert's opinion." *State v. Anderson*, 44 Wn. App. 644, 652, 723 P.2d 464 (1986), *review dismissed*, 109 Wn.2d 1015 (1987). The trial court should determine under ER 403 whether to allow disclosure of inadmissible underlying facts based upon whether the probative value of this information outweighs its prejudicial or possibly misleading effects. Laird C. Kirkpatrick, *Oregon Evidence*, at 311 (1982). Moreover,

> While Rule 703 permits an expert witness to take into account matters which are unadmitted and inadmissible, it does not follow that such a witness may simply report such matters to the trier of fact: The Rule was not designed to enable a witness to summarize and reiterate all manner of inadmissible evidence . . . .

3 David Louisell & Christopher Mueller, *Federal Evidence* § 389, at 663 (1979).

In *Anderson*, the defendant was charged with first degree murder. The trial court refused to allow defense expert witnesses to testify to statements the defendant made while they were evaluating his mental condition, and the Court of Appeals affirmed. *Anderson*, 44 Wn. App. at 652-53. The Washington Supreme Court reached a similar conclusion in *Washington Irrigation & Dev. Co. v. Sherman*, 106 Wn.2d 685, 724 P.2d 997 (1986). In *Sherman*, the trial court allowed a doctor to testify regarding reports of other nontestifying doctors, which were not admitted into evidence. *Sherman*, 106 Wn.2d at 687. The court held that the expert witness did not rely on the conclusions of these other doctors to formulate his opinion; thus, the conclusions were improperly admitted. *Sherman*, 106 Wn.2d at 688.

Decisions from other jurisdictions support our position that rules 703 and 705 should not be construed so as to "bootstrap" into evidence hearsay that is not necessary to help the jury understand the expert's opinion. *See Dallas & Mavis Forwarding Co. v. Stegall*, 659 F.2d 721 (6th Cir. 1981) (trial court properly refused to admit state trooper's report on exact location of automobile accident, where the report contained no physical data and consisted primarily of statements of biased eyewitnesses); *Hutchinson v. Groskin*, 927 F.2d 722 (2nd Cir. 1991) (trial court erred in permitting medical defense expert to state whether his opinion was consistent with those expressed in letters from three other doctors, thus conveying to the jury the hearsay opinions of these other doctors).

In the present case, the evidence excluded by the trial court was the hearsay statements of third parties and was

not necessary to explain the basis of Lowe's opinion. Allowing Lowe to testify to the opinions of third parties regarding the condition of the furnace could have been misleading because the jury would have been likely to construe this as substantive evidence. Moreover, some witnesses' testimony at trial differed from statements that, according to Lowe, they had previously made to him. Allowing him to testify regarding these statements would also have been misleading and confusing to the jury.

For these reasons, the trial court did not abuse its discretion in limiting the scope of Lowe's testimony.

## C
### Restitution

Washington statutes authorize trial courts to order restitution in criminal cases. *See* RCW 9.94A.142, 9A.20.030. A court's authority to impose restitution is derived purely from statutes. *State v. Smith*, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992). The trial court's imposition of restitution is reviewed under an abuse of discretion standard. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991).

As a general rule, "[r]estitution is appropriate if the ultimate damages are foreseeable to the defendant and the trial court finds a causal connection between the crime proved and the injuries for which compensation is made." *State v. Clapp*, 67 Wn. App. 263, 276, 834 P.2d 1101 (1992), *review denied*, 121 Wn.2d 1020 (1993). However, compensation is not the primary purpose of restitution, and the criminal process should not be used as a means to enforce civil claims. *State v. Barr*, 99 Wn.2d 75, 79, 658 P.2d 1247 (1983); *State v. Barnett*, 36 Wn. App. 560, 563, 675 P.2d 626, *review denied*, 101 Wn.2d 1011 (1984).

Universal was awarded restitution for its expenses in investigating the fire, and for attorney fees and costs it incurred in defending the civil action Martinez brought in federal court to collect on his insurance policy. These two components of the restitution must be analyzed separately.

The beginning point for analysis is the language of the statute, which authorizes restitution for four different elements of injury, indicated by bracketed numbers inserted below:

> Restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for [1] injury to or loss of property, [2] actual expenses incurred for treatment for injury to persons, and [3] lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include [4] the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

RCW 9.94A.142(1). This statute does not authorize compensation for all damages resulting from criminal activity. The legislature specifically limited its application to restitution for: property loss or damage; injury to persons; lost wages; and counseling.

Universal cannot recover its investigative costs because they do not fit into any of the classes of expenses defined in the statute. None of Universal's property has been lost or damaged, and Universal has not paid for any treatment or counseling for injury to any person or for any lost wages. Furthermore, the statute specifically excludes restitution for intangible losses.

A second reason Universal cannot recover is that it is not a "victim." The statute limits restitution to "double the amount of the offender's gain or the victim's loss from the commission of the crime," RCW 9.94A.142(1), which impliedly limits restitution to "victims." RCW 9.94A .030(35) defines "victim" as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." Universal has not suffered any injury to person or property as a direct result of the crime charged.

Universal relies on several cases to support restitution.

*Smith,* 119 Wn.2d 385; *Davison,* 116 Wn.2d 917; *State v. Johnson,* 69 Wn. App. 189, 847 P.2d 960 (1993). In *Davison,* the victim of an assault had been paid wages by his employer during the time he was unable to work after an assault. The court affirmed an award of restitution to the employer. *Davison*'s interpretation of the language of RCW 9.94A.142 is best understood under a quasi-subrogation theory—the employer stood in the shoes of the assault victim, who could clearly have recovered lost wages under the statute if the employer had not paid them:

> Restitution to the City is authorized as damages for injury to or loss of property. The funds paid by the City for the victim's wages were its property. Because of the assault the City was deprived of the services of its employee, the assault victim. Further, had the City not paid the assault victim his wages, it is obvious that he would have sustained damages *explicitly identified by the statute as the subject of restitution,* lost wages.
>
> It would not serve the purpose or policy underlying the statute to permit the offender to escape responsibility for the consequences of his harmful assault by denying restitution simply because the City chose, from legal obligation *or otherwise,* to pay its employee rather than subject that victim to the hardship and uncertainty of awaiting possible restitution paid directly to the victim.

(Italics ours.) *Davison,* 116 Wn.2d at 921-22. *See also Barnett,* 36 Wn. App. at 562 ("[I]nsurance companies which pay claims to an insured because of loss suffered from burglary or theft can be said to have suffered a loss under the principles of subrogation.").

*Davison* does not support the award of investigative fees to Universal. Universal did not pay anything to the victim of the arson, and unlike lost wages, the investigative expenses simply do not fit into any of the classes of damages allowed by the statute.

*State v. Smith,* 119 Wn.2d 385, which involved a burglary, held that the bank's costs of unloading, reloading and resetting bank surveillance cameras were appropriate damages for which the court could order restitution. Universal relies

on *Smith* to argue that it is a "victim" which has suffered "financial injury." *Smith* cannot be read so broadly. The bank in *Smith* was clearly a victim, because it had been burglarized. The burglary triggered the cameras, causing "injury to or loss of property" within the meaning of the restitution statute. *Smith*, 119 Wn.2d at 389-90. Here, by contrast, Universal was not the victim of the arson and did not pay any funds to a victim of the arson for which it may be subrogated.

Nor is recovery of the investigative fees supported by *State v. Johnson,* 69 Wn. App. 189. *Johnson* was an embezzlement case in which the victim, family members, and friends spent many hours reviewing accounting records in order to determine the extent of the loss. The defendant, apparently conceding that the expenses would be recoverable in a proper case, argued that the victim and his family members were unqualified to review the records accurately and efficiently. 69 Wn. App. at 192-93. The defendant also argued that the victim had no legal obligation to repay these expenses to his family and friends. The court rejected these arguments, but never directly considered whether investigation expenses could be awarded in the first place.

■■■ With regard to the second component of the restitution award, attorney fees and costs incurred in the civil litigation also may not be recovered. The Washington Supreme Court has held that counsel fees are not costs; thus, they are not recoverable as an element of damages. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 102, 111 P.2d 612 (1941). Moreover, the general rule is that attorney fees may be recovered only when authorized by statute, by the parties' private agreement, or on a recognized ground of equity. In the absence of one of these three bases, a court has no power to award attorney fees as part of the litigation. *State v. Keeney,* 112 Wn.2d 140, 142, 769 P.2d 295 (1989).

The Court of Appeals has held that attorney fees connected with a separate civil action could not be awarded

as restitution in a criminal case. *State v. Vinyard*, 50 Wn. App. 888, 894, 751 P.2d 339 (1988). In *Vinyard*, the defendant was convicted of second degree custodial interference. The victim, the child's father, sought restitution of the expenses incurred in locating his son.[3] Included in the restitution order were attorney fees for representation at civil hearings regarding the defendant's visitation rights. The Court of Appeals allowed recovery of most of the father's expenses, but it noted that these attorney fees were neither incurred in locating the son nor causally related to the defendant's crime. *Vinyard*, 50 Wn. App. at 894.

The principles expressed in *Macri* and *Vinyard* support the conclusion that attorney fees and costs should not be recoverable as restitution in a criminal case. First, the grounds upon which a party may recover such costs are narrow and should not be judicially expanded; here, none of the recognized bases for awarding attorney fees exists. Second, the attorney fees and costs Universal incurred in defending Martinez's civil action were not sufficiently causally related to the actual crime of arson. As in *Vinyard*, these costs were incurred in a separate civil action. Martinez's civil action was not a direct result of the arson, but was instead a separate and independent act.

For these reasons, the trial court erred in awarding restitution to Universal.

We affirm the conviction and reverse the restitution award to Universal.

SEINFELD, C.J., and WIGGINS, J., concur.

Review denied at 128 Wn.2d 1017 (1996).

---

[3]The custodial interference statute provides that "reasonable expenses incurred in locating or returning a child or incompetent person shall be assessed against a defendant" convicted under the statute. RCW 9A.40.080(1). However, the *Vinyard* court also relied on restitution provisions of the Sentencing Reform Act (RCW 9.94A.140). *Vinyard*, 50 Wn. App. at 891.