2016 JUL 25 AM 9: 15


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73759-7-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| VINOD CHANDRA RAM, | ) ) | |
| Appellant. | ) ) | FILED: July 25, 2016 |

APPELWICK, J. — Ram was convicted of conspiracy to commit identity theft in the first degree and 16 counts of identity theft in the first degree. The trial court ordered restitution to be paid to the 16 victims of Ram's crimes. Ram argues that the trial court erred in setting the payees and amount of restitution. We affirm.

## FACTS

Ram was convicted of conspiracy to commit identity theft and 16 counts of identity theft. The charges were related to his unauthorized use of 18 companies' fuel account cards.[1]

Companies with fleets of vehicles, such as trucking companies, often use fuel cards issued by fuel companies. These cards allow the companies' drivers to

---

[1] Ram was initially charged with the identity theft of 18 victim companies. One count was dismissed when a company employee failed to testify at trial, and the jury acquitted Ram of another count.

purchase fuel at unattended "card lock" stations by swiping the card and entering a personal identification number (PIN). Two major fuel companies in Washington are Associated Petroleum Products (APP) and PetroCard.

The evidence at trial showed that Ram was the leader of a ring that used stolen and cloned fuel cards to purchase fuel at card lock stations. Ram's accomplices, Manny Chuks and Damiun Prasad, testified that they used fuel cards and PIN numbers that Ram had given them to activate the fuel pumps. The fuel cards Ram gave them sometimes looked like normal fuel cards with colors and writing on them, and sometimes the cards were completely blank. Ram and his accomplices gave the truck drivers a discount below the retail price of the fuel. These truck drivers paid Ram for the fuel using cash.

Employees from 17 companies testified at trial, and invoices from each company were admitted into evidence. Many of these invoices had been highlighted and marked by company employees to indicate which purchases were unauthorized.

The jury found Ram guilty of conspiracy to commit identity theft in the first degree and 16 counts of identity theft in the first degree.

The court later held a restitution hearing. The State requested restitution for all of the victim companies that Ram was convicted of defrauding. These companies were: Genesee Heating & Fuel Co., PetroCard for Knight Transport, Security Contractor Services, Jackson Oil Company, General Teamsters Local 174, James J. Williams Bulk Service Transport, Bartelson Transport, Graham Trucking Inc., General Transport, Port-Pass, Schnitzer Steel Industries, Metals

Express, Diamond Express Auto Transport, Quality Towing, C&C Logging, and Marc Nelson Oil Products Inc. for Freres Lumber Co. The State relied on the evidence admitted at trial.

Ram submitted the declaration of his investigator, Ray Ward. Ward stated that he spoke with PetroCard and APP representatives. Ward claimed that these representatives told him that Genesee Fuel & Heating Co., General Teamsters Local 174, James J. Williams Bulk Service Transport, Graham Trucking Inc., Port-Pass, Schnitzer Steel Industries, and Metals Express did not make any payments toward the fraudulent purchases. And, Ward asserted that the PetroCard and APP representatives told him that PetroCard and APP replaced the inventory and wrote off the loss for these transactions.

The court ultimately decided to enter the restitution order as the State requested. In reaching this decision, the court noted that it had reviewed Ward's declaration, which "raises some interesting issues." But, the court was persuaded that the State had met its burden.

Ram appeals the order of restitution.

## DISCUSSION

Ram argues that the trial court erred in awarding restitution to the trucking companies in the amount of the retail price of the fuel. He contends that the fuel companies were the true victims, and their loss is not equal to the price they charged for the fuel.

The authority to impose restitution is purely statutory. State v. Davison, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). When the type of restitution ordered is

authorized by statute, the trial court has discretion to impose restitution. Id. This court does not reverse a restitution order absent an abuse of discretion. Id.

RCW 9.94A.753(3) requires that a restitution order "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." It specifies that restitution shall not include intangible losses. RCW 9.94A.753(3). And, it provides that "[t]he amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.753(3). For purposes of this statute, "victim" is defined as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(54).

A restitution order must be based on a causal relationship between the crime proven and the victim's damages. State v. Dauenhauer, 103 Wn. App. 373, 378, 12 P.3d 661 (2000). Once the fact of damage has been established, the amount need not be shown with mathematical certainty. State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984). Evidence supporting a restitution order is sufficient if it provides a reasonable basis for estimating loss. State v. Dedonado, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000).

Ram contends that Ward's declaration proves that the defrauded trucking companies were not the proper victims for purposes of restitution. He argues that these companies did not suffer any losses as a result of Ram's actions, so the restitution award is a windfall for them.

4

The State argues that Ram does not have standing to make this argument, because it asserts the rights of the fuel companies that may wish to be substituted as payees. The State compares this case to State v. Tobin, 132 Wn. App. 161, 130 P.3d 426 (2006, aff'd, 161 Wn.2d 517, 166 P.3d 1167 (2007). Tobin pleaded guilty to charges related to his theft of geoducks and crab. 132 Wn. App. at 164-65. The court awarded restitution to be distributed first to the State and then allocated by agreement among the State and several Native American tribes. Id. at 166. The court adopted the State's calculations regarding the total amount of restitution. Id. at 165-66. On appeal, Tobin argued that the restitution order erroneously included geoducks that belonged to a Native American tribe, and to which the State had no right. Id. at 180. The court of appeals rejected this argument, because Tobin had no standing to assert the interests of the Native American tribes. Id.

Unlike Tobin, Ram is not merely asserting one victim's right to the proper allocation of the restitution among several victims. Ram asserts that the court identified the wrong payees and as a result the wrong measure of restitution. He is asserting his own rights, not the rights of the fuel companies. Therefore, we decline the State's invitation to decide this case on the basis of standing.

Here, the trucking companies were the direct victims of Ram's crimes. Ram used stolen and cloned fuel cards to purchase fuel. The true owners of those fuel cards were billed for the purchases. They incurred a financial liability to pay those

charges as a direct result of Ram's actions.[2] The State proved the amount of each company's financial liability at trial through the testimony of the companies' employees and their invoices. We hold that the trial court did not err in ordering restitution to be paid to the trucking companies.

Ram has the right to dispute the amount of the restitution order. Here, the fuel distributors had contractual relationships with the victims which protected their right to payment. Ram asserts that the fuel companies waived payment from the trucking companies. Therefore, he argues that the fuel companies are the proper payees and the loss should be valued based on their loss rather than the waived invoice prices.

In support of this argument, Ram cites cases from other jurisdictions. Because the power to order restitution is purely statutory, out-of-state cases are of little utility in interpreting Washington's restitution statutes.[3]

And, Ram's argument concerning the amount of restitution is premised on his theory that the proper payees were APP and PetroCard. Because we conclude that the trial court did not err in ordering restitution to be paid to the victim trucking

_____

[2] Ram cites State v. Martinez, 78 Wn. App. 870, 899 P.2d 1302 (1995) for the proposition that indirect losses cannot support a restitution order. But, the Washington Supreme Court explicitly rejected this proposition in State v. Kinneman, 155 Wn.2d 272, 287, 119 P.3d 350 (2005). Moreover, this argument has no relevance here, where the trucking companies incurred direct losses because of Ram's actions. Ram suggests that the trucking companies did not actually incur the losses. We disagree.

[3] Ram argues that this case is directly analogous to People v. Chappelone, 183 Cal. App. 4th 1159, 107 Cal. Rptr. 3d 895 (2010). But, the California restitution statute gives much more specific guidelines on how to calculate restitution when the victim has suffered economic loss. Compare Cal. Penal Code § 1202.4(f)(3)(A), with RCW 9.94A.753(3). We do not view Chappelone as persuasive authority.

companies rather than the fuel companies, Ram's argument about the amount of restitution becomes largely irrelevant.[4]

Additionally, the amount of restitution is a matter squarely within the discretion of the trial court. State v. Pollard, 66 Wn. App. 779, 785, 834 P.2d 51 (1992). So long as the amount of damages is supported by substantial credible evidence at the restitution hearing, this court will not find an abuse of discretion. Id. During trial, the State produced invoices from all of the victim companies. These invoices showed the cost of the unauthorized fuel purchases. And, employees from all of the companies testified as to the amount of unauthorized purchases charged to their companies. These amounts were the retail amount of the fuel—the price the victim companies owed to the fuel companies for the purchases.

Ram essentially asks us to require the State to also prove that each company had not been reimbursed or released from their obligation to pay. To do so would be to add a requirement not found in the statute before restitution can be ordered for any theft case. Such an additional requirement is not in line with one of the purposes of the restitution statutes—to require the defendant to face the consequences of his or her crimes. See State v. Enstone, 137 Wn.2d 675, 680, 974 P.2d 828 (1999). Such changes are left to the legislature. Here, the trial court

---

[4] We note that the restitution order does appear to list two fuel companies as payees rather than the direct victims: Mark Nelson Oil Products, Inc. for Freres Lumber Co. and PetroCard for Knight Transport.

provided that the restitution order could be amended to reflect a change in payee, if the State learns that any of the victim companies have been reimbursed.[5]

Based on this evidence, the trial court did not abuse its discretion in setting restitution in the retail amount of the fuel.

We affirm.

_Appelwick, J._

WE CONCUR:

_Trickey, ACJ_        _Cox, J._

---

[5] This provision properly allows the trial court to modify the order if additional information comes to light. See RCW 9.94A.753(4) (stating that restitution may be modified as to amount, terms, and conditions while the offender remains under the court's jurisdiction); State v. Gray, 174 Wn.2d 920, 927, 935, 280 P.3d 1110 (2012) (holding that courts may modify the total amount of restitution after 180 days).