# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58893-5-II |
| Respondent, | |
| v. | |
| JULIA GAYE NEWBERRY, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Julia Newberry appeals her conviction of unlawful possession of a stolen motor vehicle following a bench trial. The conviction arose from an incident in which a law enforcement officer observed Newberry in the driver's seat of a parked vehicle without license plates. The officer recorded the vehicle's identification number (VIN). A rental car company had made a stolen vehicle report for a vehicle similar to the one in which Newberry was seated.

The day before trial, the State produced screenshot of a "313 screen" from the rental car company that contained the VIN of the vehicle it had reported as stolen. Newberry objected to the late disclosure and the trial court excluded the document from evidence. However, at trial the court allowed the prosecutor to use the document to refresh the rental car company representative's memory regarding the VIN.

In its written findings, the court explicitly referenced testimony from the investigating officer that previously had been excluded. The court also found that a reasonable person would have known that the vehicle was stolen.

We hold that (1) the trial court did not abuse its discretion by allowing the prosecutor to use the late-disclosed document to refresh a witness's memory; (2) the trial court did not abuse its discretion in allowing the prosecutor to refresh the witness's recollection with the 313 screen; (3) even though the trial court referenced excluded hearsay evidence in its findings, the court did not rely on that inadmissible evidence to find Newberry guilty; (4) even though the trial court stated in its findings that a reasonable person should have known that the vehicle was stolen, the court applied the correct actual knowledge standard for unlawful possession of a stolen motor vehicle; and (5) community custody condition 10, which allows home visits by the Department of Corrections (DOC), must be stricken or modified to include a reasonable suspicion requirement.

Accordingly, we affirm Newberry's conviction for unlawful possession of a stolen motor vehicle, but we remand for the trial court to strike or amend community custody condition 10.

FACTS

*Background*

In January 2023, Clark County Sheriff's Deputy Michael Gonzalez observed Newberry in the driver's seat of a white Toyota SUV in a store parking lot. The vehicle had no license plates and a broken-out driver's side rear window that appeared to be covered with plastic. Gonzalez approached the vehicle and introduced himself. Before he asked any questions, Newberry stated that the car was not hers and that she was not driving. Gonzalez noticed that Newberry appeared unusually nervous, with beads of sweat running down her face and shaking hands. He attempted

to look at the vehicle's VIN, but the front dash was cluttered with trash and a piece of paper slipped under the dash obstructed the VIN. Newberry consented to Gonzalez looking at the VIN on the interior door of the car. When Gonzalez reported the VIN to law enforcement dispatch, dispatch advised Gonzalez that the vehicle had been reported stolen out of Hillsboro, Oregon in August 2022.

Gonzalez arrested Newberry and interviewed her. Newberry initially stated that she had the vehicle for four days, but later said that she had probably had the vehicle for six days. Newberry stated that the car belonged to a friend, she gave her friend $200 to rent the car from her, and she planned to give the car back to her friend after a week. But Newberry did not know her friend's address or phone number and claimed that she only reached her friend through Facebook messaging. When Gonzalez asked her to show him those Facebook messages, Newberry stated that the conversation she had with her friend actually was in person. Newberry did not know the details of how or when her friend had acquired the car. Newberry stated that the vehicle's broken window was caused by her two dogs fighting.

A rental car company in Beaverton, Oregon rented out a 2020 white Toyota C-HR in August 2022, and reported it stolen in October 2022 after it was not returned. The company never authorized Newberry to rent or possess a vehicle.

The State charged Newberry with one count of possession of a stolen motor vehicle. At the omnibus hearing, the trial court set March 10, 2023 as the deadline for the State to disclose discovery. Trial was scheduled for April 20, 2023. Newberry waived her right to a jury trial.

*Late Disclosure*

On the day of trial, defense counsel told the trial court that the previous afternoon the State had sent him an email containing two documents. One of the documents later was

described as a screenshot of the rental car company's 313 screen. Defense counsel requested that the court exclude the documents because they were produced in violation of the discovery rules and the omnibus order.

The prosecutor stated that he had received these documents from the rental car company on April 18, two days before trial, after talking to a company representative. The prosecutor stated that he did not anticipate seeking to admit either document into evidence, but he might use the 313 screen to refresh the rental car company representative's recollection.

The trial court found a discovery violation: "The documents are a surprise. They were discovered way too late. They should have been discovered a long time ago, and they weren't." Rep. of Proc. (RP) at 40. The court ruled that the late-disclosed documents would not be admitted into evidence and could not be used to refresh recollection.

Later, the State asked the trial court to reserve ruling on the use of one of the excluded documents to refresh a witness's recollection. The court responded, "All right." RP at 80.

*Trial Testimony*

On the first day of trial, Gonzalez testified at a CrR 3.5 hearing to the facts stated above. He also stated that he gave the vehicle's VIN to police dispatch, who informed him that the vehicle had been reported as stolen. Newberry agreed that the trial court could consider Gonzalez's CrR 3.5 testimony at trial except for the statement that dispatch told him that the vehicle had been reported as stolen. The court stated that it would not consider in its determination the statement from dispatch that the vehicle had been reported as stolen.

Raia Peavy was the assistant manager of the rental car company in Beaverton. In October 2022, she reported that a white Toyota SUV had been stolen from the company.

When the prosecutor started to ask Peavy about the VIN for the stolen vehicle, Newberry objected and asked to voir dire the witness. On voir dire, Peavy testified that she did not know the VIN of the stolen vehicle when it was rented out. And she did not know the VIN by memory when she had sent certain information to Deputy Gonzalez a few months earlier. After completing voir dire, Newberry stated, "Your Honor, that's the base [sic] of my objection. She doesn't know the VIN. She didn't know the VIN when she emailed the deputy." RP at 129. The trial court sustained the objection to the specific question asked.

On further questioning, Peavy admitted that she did not memorize the VINs of all the vehicles in the rental car company's fleet. But she stated that she would have determined that a vehicle with a certain VIN was in the company's fleet during the process of trying to recover the stolen vehicle. Peavy stated that a document called a 313 screen, created in the ordinary course of business for each vehicle in the rental car company's fleet, contains each vehicle's VIN. She would use the 313 screen to determine whether a vehicle with a particular VIN was in the rental car company's fleet.

The prosecutor then asked Peavy the following questions:

Q   Okay. So, you believe that looking at [the 313 screen] would refresh your recollection as to whether a particular VIN number and the associated vehicle is in your fleet?

A  Yes.

Q  And that's something about which you once did have knowledge, correct?

A  Yes.

Q  And at this point you can't remember the particular VIN number?

A  Yes.

RP at 137.

The State moved to refresh Peavy's recollection with the 313 screen. Newberry objected based on the court's pretrial ruling, arguing, "That's just the very basis of my objection[;] this is Your Honor's pretrial ruling." RP at 137. Newberry also argued that the 313 screen was hearsay. The State responded that the 313 screen was not hearsay because it was a business record.[1] Newberry did not reference ER 612 or object on the basis that Peavy did not have a memory of the VIN. The trial court allowed the State to use the 313 screen, stating, "I believe that the document is a business record and could be used to refresh recollection." RP at 143.

The prosector then asked the following questions:

Q So now, you -- you mentioned a 313 screen?

A Mm-hmm.

Q Okay. And you said that that would refresh your recollection as to what the VIN number is, is this case?

A Yes.
. . . .

Q You testified that you previously had knowledge of whether a VIN number was in your employer's fleet, correct?

A Yes.

Q Okay. And you testified that you can't remember that information now, correct?

A Yes.

RP at 146-47.

---

[1] Whether the 313 screen was hearsay is immaterial because a document need not be admissible if used only to refresh recollection. *State v. Cecil*, 34 Wn. App. 2d 569, 591, 571 P.3d 1255 (2025).

At this point, the prosecutor asked the trial court if he could ask Peavy if the 313 screen refreshed her recollection. Newberry objected, stating "I'd object to him leading the witness. If she remembers it, she remembers it. But, if he's putting the words in her mouth. [. . .]." RP at 148. The court directed the prosector to ask the question.

The prosecutor asked, "Based on the document that you reviewed, what was the VIN number of the . . . vehicle that was -- that's in your employer's fleet?" RP at 148. After reviewing the 313 screen, Peavy recalled the VIN incorrectly. The prosecutor showed her the 313 screen a second time and again asked her to recall the VIN. Peavy recalled the VIN incorrectly again, stating that she has a mild form of dyslexia. The prosecutor asked the trial court for permission to show Peavy the 313 screen again, which the court granted. The prosecutor then showed Peavy the exhibit a third time and asked for just the first four digits. At this point, Newberry stated, "[S]he's reading from it right now." RP at 151. Peavy recited the first five numbers of the VIN. The prosecutor repeated the process of showing Peavy the 313 screen for a fourth and fifth time, breaking the VIN into three parts, until Peavy recited the VIN correctly.

*Verdict and Findings*

Before the trial court rendered its verdict, Newberry objected to the use of the 313 screen to refresh Peavy's memory. Newberry stated that she believed that she had objected, but she did not cite to ER 612. Newbery stated, "Ultimately, the witness was reduced to reading one or two digits at a time. And then reciting those for the Court. So, this -- this did not meet the standards of ER 612. So, but I did screw up in not identifying ER 612 as a basis of my objection." RP at 171-72. The court acknowledged but did not rule on Newberry's objection.

7

The trial court found Newberry guilty of unlawful possession of a stolen motor vehicle.

The trial court's findings of fact and conclusions of law stated,

> The State proved beyond a reasonable doubt that Julia Newberry knowingly possessed a stolen motor vehicle. Ms. Newberry was sitting in the driver's seat of the White Toyota CHR in the Fred Meyer Parking lot on 1/11/23. Before even being asked a question by Deputy Gonzales she stated "This isn't my car" and "I wasn't driving". *When the VIN on the car she was in was run, it came back as reported stolen out of Hillsboro, OR.*

Clerk's Papers (CP) at 20 (emphasis added).

> Regarding Newberry's knowledge, the trial court continued,

> The State proved beyond a reasonable doubt that Julia Newberry acted with knowledge that the [vehicle] had been stolen. The original comments she made to Deputy Gonzales go directly to proving that element. In addition, she gave conflicting stories about how long she had the vehicle, she did not have a number for the friend she said she got the car from, she did not have FB messages about the car to confirm her story of how she got the car, her claim that two small dogs broke the window did not make sense, she was in a location in the car where she could see that the dash VIN was obscured, and the car had no license plates. *A reasonable person would have known, or should have known, that this vehicle was stolen.*

CP at 20 (emphasis added).

> Regarding the identity of the vehicle, the trial court stated,

> [T]he car that Ms. Newberry was in possession of on 1/11/23 was the car Ms. Peavy reported stolen on 10/17 /22 when it was not returned to [the rental car company's office in] Beaverton in August of 2022. . . . *The State proved beyond a reasonable doubt that this vehicle was in* [the rental car company's] *fleet in August 2022 when it was rented out.* When it was not returned, Ms. Peavy attempted to locate it using [the rental car company's] repossession procedures and when that did not happen, she personally reported it stolen. At the time it was not returned in August 2022, [the rental car company in] Beaverton OR was entitled to it.

CP at 20 (emphasis added). Based on the findings, the court found Newberry guilty of unlawful possession of a stolen motor vehicle.

The trial court sentenced Newberry to a mental health sentencing alternative consisting of 36 months of community custody. The court imposed community custody condition 10, which required Newberry to submit to visits of her home by DOC.

Newberry appeals her conviction and the imposition of the community custody condition 10.

## ANALYSIS

A.    LATE DISCOVERY DISCLOSURE

Newberry argues that the trial court erred in allowing the prosecution to use the 313 screen to refresh Peavy's memory because that document was not disclosed until the day before trial in violation of CrR 4.7(a)(1)(v). We disagree.

### 1.    Legal Principles

CrR 4.7(a)(1)(v) states that, no later than the omnibus hearing, a prosecutor must disclose to the defendant any documents within the prosecutor's control that the prosecutor intends to use at trial. Under CrR 4.7(a), the prosecutor's discovery duty extends only to materials and information that are within the knowledge, possession, or control of the prosecutor or their staff. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). The State has no duty to disclose evidence that was never in its possession or control. *State v. Martinez*, 78 Wn. App. 870, 875, 899 P.2d 1302 (1995).

If a trial court has decided that a party failed to comply with a discovery rule, CrR 4.7(h)(7)(i) states that a court "may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." We review discovery decisions based on CrR 4.7 for abuse of discretion. *State v. Asaeli*, 17 Wn. App. 2d 697, 699, 491 P.3d 245 (2021).

2.     Analysis

Initially, the State argues that there was no violation of CrR 4.7(a)(1)(v).  The documents that were obtained from the rental car company on April 18, 2023 – including the 313 screen – were not in the State's control before the discovery deadline.  However, the trial court found a discovery violation and the State did not cross-appeal that ruling.  Therefore, the only issue is whether the trial court abused its discretion regarding the remedy for this violation.

Newberry argues that the trial court did not sanction the State at all for its discovery violation.  But that argument is incorrect.  The court precluded the State from introducing the 313 screen into evidence.  That was a significant sanction because otherwise the State could have introduced the 313 screen as a business record to show the VIN without having to rely on Peavy's refreshed memory.

Newberry argues that the trial court should have imposed an additional sanction – precluding the State from using the 313 screen to refresh Peavy's recollection.  However, CrR 4.7(h)(7)(i) states that a court "*may* . . . enter such other order as it deems just under the circumstances."  (Emphasis added.)  And CrR 4.7(h)(7)(i) does not require any particular sanction and specifically does not require the court to preclude the State from making any use of a late disclosed document.  Therefore, a trial court has wide discretion in determining the sanction for a discovery violation.  *See Asaeli*, 17 Wn. App. 2d at 699.

Here, the trial court ruled that the State could not introduce the 313 screen into evidence.  Although the court originally ruled that the 313 screen could not be used to refresh recollection, during trial the court allowed the State to use that document to refresh Peavy's recollection.  The court's rulings were within the court's discretion under CrR 4.7(h)(7)(i).  Accordingly, we hold

that the trial court did not abuse its discretion by allowing the late-disclosed 313 screen to be used at trial only to refresh Peavy's recollection.

B.    REFRESHING WITNESS'S RECOLLECTION

Newberry argues that the trial court erred by allowing the State to refresh Peavy's recollection with the 313 screen because Peavy had no independent memory of the VIN and therefore had no recollection to refresh. We disagree.[2]

1.    Legal Principles

ER 612 provides the procedure for using a writing to refresh a witness's memory, including allowing an adverse party to have the writing produced at the hearing and to cross-examine the witness regarding the writing. When a witness's memory is refreshed, the writing is "used to trigger his psychological mechanisms of recognition and recollection, enabling the witness to then testify from his own memory." *State v. Little*, 57 Wn.2d 516, 520, 358 P.2d 120 (1961).

When considering a request to refresh a witness's memory, the trial court must determine that "the witness's memory must need to be refreshed and the trial court must be satisfied that the witness is not being coached." *State v. Cecil*, 34 Wn. App. 2d 569, 591, 571 P.3d 1255 (2025). A witness is coached when a party uses the writing to supplant, rather than to aid, the witness's memory. *Id.* A party cannot "urge a witness to create testimony, under the guise of refreshing the witness's recollection under ER 612." *State v. McCreven*, 170 Wn. App. 444, 475, 284 P.3d 793 (2012).

---

[2] Initially, the State argues that Newberry failed to preserve her challenge to the use of the 313 screen to refresh Peavy's memory because she did not object based on ER 612. We conclude that although Newberry's objections could have been more clear and persistant, she sufficiently preserved this issue for appeal.

The trial judge has the discretion to decide whether to allow a witness to use a document to refresh their memory. *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979). On appeal, our function is limited: "[t]he sole issue is whether the trial judge abused his discretion." *Id.* An abuse of discretion occurs "if no reasonable person would take the view adopted by the trial court." *Id.*

2.   Analysis

Here, Peavy twice testified that she once had knowledge of the stolen vehicle's VIN, now she could not remember it, and the 313 screen would refresh her recollection. This testimony satisfies the first requirement for use of a document to refresh memory – that "the witness's memory must need to be refreshed." *Cecil*, 34 Wn. App. 2d at 591. The issue is whether Peavy was coached – whether the 313 screen supplanted rather than aided Peavy's memory. *Id.*

Newberry argues that Peavy's earlier testimony showed that she never had a memory of the stolen vehicle's VIN. But Peavy later affirmatively stated that she did have knowledge of the VIN, which she reviewed during the vehicle recovery process. The trial court was in the best position to weigh this testimony.

Newberry also argues that the prolonged process in which the prosecutor attempted to get Peavy to remember the VIN shows that the prosecutor was coaching her. However, Peavy ultimately did recite the full VIN using the 313 screen to refresh her recollection. The trial court was in the best position to determine whether Peavy actually was refreshing her memory rather than being coached.

The standard of review is abuse of discretion. *Huelett*, 92 Wn.2d at 969. We hold that the trial court did not abuse its discretion in allowing the prosecutor to refresh Peavy's memory using the 313 screen.

C.      RELIANCE ON EXCLUDED HEARSAY EVIDENCE

Newberry argues that the trial court erroneously relied on excluded hearsay evidence to find her guilty. We disagree.

Gonzalez testified in the CrR 3.5 hearing that dispatch told him that the vehicle Newberry was in had been reported as stolen. Newberry objected to the trial court considering that statement during the bench trial. The court agreed to strike that statement from its consideration. However, in its written ruling, the court recited the excluded statement: "When the VIN on the car [Newberry] was in was run, it came back as reported stolen out of Hillsboro, OR." CP at 20.

We presume that a judge in a bench trial does not consider inadmissible evidence in rendering a verdict. *State v. Read*, 147 Wn.2d 238, 244, 53 P.3d 26 (2002). But the presumption can be rebutted if (1) the admissible evidence is not sufficient to support the verdict, or (2) "the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." *Id.* at 246.

Here, the trial court referenced evidence that it had excluded as inadmissible in its written ruling. However, the court did not find that the vehicle in which Newberry was sitting was stolen based on the report made to Gonzalez. Instead, later in the written ruling the court made a more specific finding that the car that Newberry was in possession of was the car that Peavy reported stolen when it was not returned to the rental car company. The court stated,

> [T]he car that Ms. Newberry was in possession of on 1/11/23 was the car Ms. Peavy reported stolen on 10/17 /22 when it was not returned to [the rental car company's office in] Beaverton in August of 2022. . . .  The State proved beyond a reasonable doubt that this vehicle was in [the rental car company's] fleet in August 2022 when it was rented out. When it was not returned, Ms. Peavy attempted to locate it using [the rental car company's] repossession procedures and when that did not happen, she personally reported it stolen. At the time it was not returned in August 2022, [the rental car company in] Beaverton OR was entitled to it.

13

CP at 20. The court's findings were independent of dispatch's report to Gonzalez.

The trial court certainly should not have included the excluded evidence in its findings. But as noted above, the *Read* presumption that a judge in a bench trial does not consider inadmissible evidence applies unless "the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." *Read*, 147 Wn.2d at 246. Even though the trial court referenced the inadmissible evidence in its ruling, nothing in the ruling indicates that the court actually relied on the excluded hearsay evidence in finding that Newberry was in possession of a vehicle stolen from the rental car company.

Accordingly, we hold that the trial court did not rely on inadmissible evidence to find Newberry guilty.

D.      KNOWLEDGE ELEMENT – ACTUAL VS. CONSTRUCTIVE

Newberry argues that the trial court erred by finding her guilty based on constructive, rather than actual, knowledge that the vehicle she was in was stolen, and there was reason to doubt whether she had actual knowledge that the vehicle was stolen. We disagree.

1.    Legal Principles

RCW 9A.56.068(1) states, "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." (Alteration in original.) "Possessing stolen property" includes possessing stolen property "knowing that it has been stolen." RCW 9A.56.140(1). The RCW 9A.56.140(1) definition applies to the crime of unlawful possession of a stolen vehicle, so the State must prove that the defendant knew the vehicle was stolen. *State v. Jones*, 13 Wn. App. 2d 386, 399, 463 P.3d 738 (2020).

Under RCW 9A.08.010(b), a person acts with knowledge when they (i) are "aware of a fact, facts, or circumstances or result described by a statute defining an offense; or" (ii) have

"information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." Whenever a crime requires that the defendant have knowledge, the State must prove actual knowledge rather than constructive knowledge. *State v. Taylor*, 29 Wn. App. 2d 319, 336, 541 P.3d 1061, *review denied,* 3 Wn.3d 1003 (2024). There is a permissible presumption that a defendant has actual knowledge if there is a finding of constructive knowledge. *Id.* But regardless of this presumption, the factfinder still must find subjective, actual knowledge. *Id.* "So, confusingly, a jury cannot convict the accused based on constructive knowledge but may determine constructive knowledge to be evidence of subjective knowledge." *Jones*, 13 Wn. App. 2d at 405.

> 2.   Analysis

Here, the trial court stated in its written ruling, "A reasonable person would have known, or should have known, that this vehicle was stolen." CP at 20. But the court made this statement after stating that the State proved beyond a reasonable doubt that Newberry acted with knowledge that the vehicle had been stolen.

The court described the evidence showing that Newberry had actual knowledge that the vehicle she was in was stolen:

> Newberry was sitting in the driver's seat of the White Toyota CHR in the [store] [p]arking lot on 1/11/23. Before even being asked a question by Deputy Gonzales she stated "This isn't my car" and "I wasn't driving". . . . The State proved beyond a reasonable doubt that Julia Newberry acted with knowledge that the [vehicle] had been stolen. The original comments she made to Deputy Gonzales go directly to proving that element. In addition, she gave conflicting stories about how long she had the vehicle, she did not have a number for the friend she said she got the car from, she did not have FB messages about the car to confirm her story of how she got the car, her claim that two small dogs broke the window did not make sense, she was in a location in the car where she could see that the dash VIN was obscured, and the car had no license plates.

CP at 20. Only then did the court discuss what a reasonable person should have known.

The trial court certainly should have made it more clear that it was relying on the presumption to find that Newberry had actual knowledge. But viewed in context, we conclude that the trial court found actual knowledge based on the evidence, and also in part by presumption based on Newberry's constructive knowledge. This inference was permissible. See *Taylor*, 29 Wn. App. 2d at 336. Accordingly, we reject Newberry's argument.

E.      CUMULATIVE ERROR

Newberry argues that cumulative error warrants reversal of her conviction. Because we reject all of Newberry's arguments, we also reject her claim of cumulative error.

F.      DOC SEARCH CONDITION

Newberry argues, and the State concedes, that community custody condition number 10, which requires her to consent to DOC home visits, is unconstitutional and overbroad by allowing for a search of her home without reasonable suspicion. We accept the State's concession and agree.

Under RCW 9.94A.631(1), a community corrections officer (CCO) may conduct a warrantless search of an offender under community custody if the CCO reasonably believes the offender has violated a condition or requirement of the sentence. A person on probation has a diminished expectation of privacy, but a CCO may perform a warrantless search only when there is a reasonable suspicion that they have violated a condition of the probation. *State v. Cornwell*, 190 Wn.2d 296, 297, 412 P.3d 1265 (2018). There must be a "nexus between the property searched and the alleged probation violation." *Id*. at 307.

Here, community custody condition 10 requires Newberry to "[c]onsent to DOC home visits to monitor compliance with supervision . . . for the purposes of visual inspection of all

areas of residence in which the offender lives or has exclusive/joint control access." CP at 31. But the condition does not require a reasonable suspicion before DOC can conduct a visit.

Accordingly, we remand for the trial court to strike or modify community custody condition 10 to include a reasonable suspicion requirement.

CONCLUSION

We affirm Newberry's conviction of unlawful possession of a stolen motor vehicle, but we remand for the trial court to strike or modify community custody condition 10.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

PRICE, J.

17